ILLINOIS CENT. R. CO. v. CAFFREY et al. BALTIMORE & O. S. W. R.
CO. v. WASSERMAN et al. CLEVELAND, C., C. & ST. L. RY.
CO. v. SAME. LOUISVILLE & N. R. CO. v. SAME.

(Circuit Court, E. D. Missouri, E. D. March 19, 1904.)

Nos. 4,865, 4,878, 4,904, 4,905.

1. INJUNCTION—JURISDICTION OF EQUITY—RESTRAINING BROKERS FROM DEAL-
ING IN NONTRANSFERABLE RAILROAD TICKETS.

A court of equity has jurisdiction of a suit by a railroad company, which
issues, and has the lawful right to issue, excursion or reduced rate round-
trip tickets to passengers, conditioned that they shall not be transferable,
to enjoin defendants, who are ticket brokers, from purchasing the unused
return portions of such tickets and reselling them to others, to be used
in violation of their terms, where it is shown that such action by defend-
ants is in violation of the laws of the United States and of the state, that
they are engaged in the ticket brokerage business and have previously
bought and resold such tickets, and facts are alleged which make it cer-
tain that, unless enjoined, they will continue to do so to a larger extent
than before, in fraud of both purchasers and complainants, and to the
irreparable injury of complainants, because of the inadequacy of any
remedy at law.

2. EQUITY—MULTIFARIOUSNESS OF BILL—JOINDER OF DEFENDANTS.

A bill will not be held demurrable for multifariousness because a large
number of persons, having no connection with each other, are joined as
defendants, where the cause of action against each is the same, and the
joinder will save a multiplicity of suits and promote the convenience of
the court and of all parties.

In Equity. On demurrers to bills.

McKeighan & Watts, for plaintiff Illinois Cent. R. Co.

Johnson & Richards and Chas. Claflin Allen, for plaintiff Baltimore
& O. S. W. R. Co.

George F. McNulty and Seddon & Holland, for plaintiff Cleveland,
C., C. & St. L. Ry. Co.

Bryan & Christie, for plaintiff Louisville & N. R. Co.

Henry W. Bond and Judson & Green, for defendants.

THAYER, Circuit Judge. The above-entitled cases are bills in
equity, which were exhibited by the four railroad companies above
named against the same defendants, who are engaged in the same busi-
ness; the object of the complainants being to obtain injunctive relief
of the same character against all of the defendants. The defendants
have filed demurrers to each of the four bills of complaint, attacking
them on the same grounds, and the question to be determined is
whether the demurrers shall be overruled or sustained. It becomes
necessary, therefore, to state the material allegations of the bills of
complaint as briefly as may be done. They contain substantially the
same allegations. They aver, in substance, that the several railroad
companies are common carriers of passengers, operating lines of rail-
road radiating from the city of St. Louis, Mo.; that the defendants
are ticket brokers, or, as they are sometimes termed, "scalpers," having

¶ 2. See Equity, vol. 19, Cent. Dig. § 371.

offices in the city of St. Louis, where they are engaged in the business of buying and selling railroad tickets, and more especially the unused portions of excursion or special rate tickets, such as the railroads are in the habit of issuing to enable persons to attend conventions, fairs, expositions, etc., at reduced rates of fare for the round trip; that the several railroads make a practice of issuing such tickets, on condition that they shall only be used by the original purchaser, and shall not be transferred to others for the purpose of being used to obtain transportation over the complainants' roads; that the complainants issued a large number of such tickets on the occasion of a musical festival held in the city of St. Louis in June, 1903, and that the defendants advertised to buy, and did in fact buy, the unused portions of large numbers of such tickets, and sold them to others to be used for transportation over the complainants' roads, to their great loss and injury; that an exposition is to be held in the city of St. Louis during the present year, and that complainants contemplate the issuance of a large number of excursion tickets at reduced rates, which will be nontransferable, to enable a large number of persons to visit the exposition and various conventions which will be held in connection therewith; and that by reason of the very large number of persons who will purchase said tickets it will be impracticable and a great public inconvenience to require the original purchasers of such nontransferable tickets to go before a validating agent and identify themselves before using the return coupons. The bills further allege that, besides issuing excursion tickets in the manner aforesaid, they also issue nontransferable mileage tickets and commutation tickets at reduced rates, all of which by their terms are nontransferable; that all such nontransferable reduced rate tickets are issued by the complainants in conformity with the laws of the state of Missouri and the laws of the United States and other states where the complainants' roads are located; that all such tickets are by their express terms and provisions good for the transportation of the original purchasers thereof only, and are void in the hands of any other than the original purchasers, and, if presented by any other than the original purchasers, are liable to be taken up by the train conductor and full fare exacted from the persons who are wrongfully attempting to use them; that the sale by the defendants of all such nontransferable tickets is contrary to the provisions of the laws of the state of Missouri, where the sales are made; that the sale of such tickets to third parties is also in violation of the provisions of the interstate commerce act, when the unused portion of a ticket is sold to a person who contemplates using the same for an interstate journey; that the conduct of the defendants in purchasing and selling such nontransferable tickets is not only in violation of the laws of the state of Missouri and the United States, but is likewise a fraud on the purchaser of the ticket and a fraud on the complainant companies, in that it subjects a person who may have purchased the unused portion of a ticket, in the belief that he has the right to use it, to the liability of being ejected from the complainants' trains, and in that the conductors and agents of the complainants are liable to be deceived, and to permit persons who have bought nontransferable tickets to ride thereon, thus depriving the complainants of a rate of fare which they are justly entitled to exact.

The bills further aver that the defendants have been accustomed to buy and sell the return coupons of nontransferable tickets, and all forms of mileage, commutation, and excursion tickets, such as are sold at reduced rates and are not transferable, to persons whom they know will use the tickets so bought to secure a passage over the complainants' roads, by falsely impersonating the original purchasers of said tickets, and that the defendants have not only repeatedly sold such tickets with full knowledge of their character, and that they were not transferable, but propose to continue in future to purchase and sell such tickets, thereby continuing to defraud the complainants by deceiving their conductors and other employés, and that such unlawful and fraudulent conduct on the part of the defendants operates as a continuous loss to complainants and inflicts irreparable injury. There are some other averments in the bills of a like character, but the allegations already recited in substance will serve sufficiently to explain their scope and purport.

The sufficiency of the bills of complaint is challenged on two grounds, namely, want of equity and multifariousness. Respecting the first of these defenses, it is to be observed that, when a court of equity is asked to enjoin the commission of a threatened act in the nature of a tort, the first inquiry is whether the act, if committed, will constitute a legal wrong; that is to say, whether it is so far wrongful that an action at law will lie to recover the damages thereby occasioned to the complaining party, or whether the threatened act belongs to the class to which the phrase "damnum absque injuria" may be applied. Hopkins v. Oxley Stave Co., 83 Fed. 912, 918, 28 C. C. A. 99. In the case at bar it does not seem to be seriously urged that the bills of complaint do not show that a legal wrong is threatened. If such a plea was urged by the defendants, it would have to be overruled. The complaining parties have the right to sell round-trip and commutation tickets over their respective roads at reduced rates, on condition that they shall only be good in the hands of the original purchasers and shall not be transferred. Contracts of this sort between a carrier and its passengers are lawful. Mosher v. St. Louis, Iron Mountain & Southern Railway Co., 127 U. S., 390, 8 Sup. Ct. 1324, 32 L. Ed. 249; Boylan v. Hot Springs Railroad Co., 132 U. S. 146, 10 Sup. Ct. 50, 33 L. Ed. 290. The statute law of the state of Missouri also expressly authorizes the sale of such tickets. Vide Rev. St. Mo. 1899, § 1127. Now the bills show that the defendants have been interfering with the exercise of this right, are doing so at the present time, and that they threaten to do so in the future. They further show that such interference with the exercise of the right in question is productive of great loss and damage, amounting almost to a deprivation of the right. The defendants make a practice of soliciting the holders of such tickets to sell the unused portions thereof, and, having purchased them, they openly resell them to third parties, to be used in violation of the provisions thereof. The number of tickets thus sold is so great that it will be practically impossible for the complainants to adopt any regulations for the management of their business that will prevent the wrongful and fraudulent use of such tickets. It can hardly be supposed that they will be able to devise any means that will enable conductors in

charge of their trains to determine whether a person presenting such a ticket is the rightful holder thereof and is entitled to use it, where thousands of such tickets are sold. The result is that the acts complained of may compel the complainants to abandon the issuance of such excursion and commutation tickets altogether, at a great loss to themselves and to the detriment of the traveling public. Besides, the actions of the defendants doubtless operate, on some occasions, as a fraud on the person to whom they sell the unused portions of nontransferable tickets, since some of the purchasers are probably led to buy them in the belief that they may lawfully use them. The court is of opinion that acts of this kind, entailing such consequences, constitute a legal wrong, and that they fall within the reach of a court of equity. The defendants are preventing the complainants from exercising a right which the law confers, or, at least, they are preventing the complainants from transacting their business in a perfectly lawful way, unless they take the chances of sustaining a great loss which seems to be almost certain to ensue. If an individual prevents another from having that free access from his premises to a public thoroughfare to which he is by law entitled, by placing any obstruction in front of his premises, a wrong is committed on account of which the law will afford redress. There is little perceivable difference between an injury of that character and the wrong complained of in the bills, whereby the complaining companies are practically prevented from transacting their business in a way that they are entitled to transact it. The court concludes, therefore, that the allegations of the bills, all of which are confessed by the demurrer, disclose a legal wrong within the preventive jurisdiction of a court of equity, and several other courts have reached the same conclusion. Nashville, C. & St. Louis Railway Co. v. McConnell (C. C.) 82 Fed. 65; Schubach v. McDonald, Judge (decided by the Supreme Court of Missouri, but not yet officially reported) 78 S. W. 1020, and cases there cited. See, also, Railroad v. Kinner, 47 Ohio Law Bul., 294; Pennsylvania Railroad Co. v. Beckman, 30 Wash. Law Rep. 715.

In support of the contention that the bills of complaint do not state a case of equitable cognizance, it is said that they do not disclose a real controversy, but merely seek to have the court lay down a rule of action for the future guidance of the defendants, and for the violation of which the defendants may be punished, not in the usual way, but by proceedings for contempt. The same may be said of every other application for injunctive relief. Every order of injunction, when granted, prescribes a rule of action, in that it forbids the party to whom it is addressed to do certain acts in the future. It is true that no court can restrain one from doing a given act, no matter how wrongful it may be, unless the act has been threatened, nor unless it appears that there is imminent danger that it will be done. It may be conceded that it is not the function of courts of equity to make laws, or to command people not to do a given act, when they have not threatened to do it or given evidence of such an intention. But when one has manifested his purpose to commit a legal wrong, and the act is of such a nature that the injured party cannot obtain adequate redress in a court of law, then a court of equity may inter-

vene. The bills of complaint show very clearly that the defendants intend to do as they have heretofore done; that is, buy the unused portions of nontransferable tickets and resell them to third parties to be used. This is their principal business, out of which they derive most profit, and it is plain that they intend to follow this calling, and to buy and sell unused portions of such nontransferable excursion and commutation tickets as the complainants now sell, or may have occasion to sell in the future, for the accommodation of the public. Of the imminence of the threatened wrong there can be no doubt. There is just as little doubt that acts of this nature will be committed so frequently, and that they will be so difficult to establish by proof, and, if so established in a court of law, will require the prosecution of so many actions, that the remedy at law will prove to be inadequate. It is also manifest that the loss to be apprehended as a natural result of the threatened wrong will be great and irreparable. The defendants are doubtless entitled to act as ticket brokers; that is to say, they are entitled to sell any tickets which the complainants or other railroad companies empower them to sell. So they may buy or sell the unused portions of such tickets as are sold by railroad companies without any limitation as to the persons by whom they may be used. But when they engage in the business of buying tickets that are not transferable, and by so doing interfere with the complainants' business and subject them to loss and expense, and assist others to perpetrate a fraud on the complainants, they are engaged in an unlawful calling, productive of injury to others, and acts of that nature can be rightfully enjoined. Hopkins v. Oxley Stave Co., 83 Fed. 912, 919, 28. C. C. A. 99, and cases there cited; Sherry v. Perkins, 147 Mass. 212, 17 N. E. 307, 9 Am. St. Rep. 689; Kinner v. Lake Shore & M. S. Ry. Co. (Ohio) 69 N. E. 614; Schubach v. McDonald (Mo.) 78 S. W. 1020; National Telegraphic News Co. v. Western Union Tel. Co., 56 C. C. A. 198, 119 Fed. 294, 60 L. R. A. 805; In re Debs, 158 U. S. 564, 15 Sup. Ct. 900, 39 L. Ed. 1092. Indeed, it would be a misfortune if courts of equity were powerless to redress grievances of that kind.

The contention that the several bills of complaint are multifarious rests upon a more substantial foundation, perhaps, than the other contention that they are without equity. Nevertheless this contention is in the nature of a technical defense, because it does not challenge the complainants'' right to relief against the respective defendants, but merely asserts that the relief should be sought against them separately. Twenty-seven persons are named as defendants in these bills. Some of them are transacting business as partners, while 6 appear to be doing business together as a corporation. There are between 15 and 20 defendants (treating those who are engaged in business as copartners or under a corporate name collectively) who are engaged in the same unlawful business separately, and as it is not alleged that there is any community of interest in the profits of the business, or that they have entered into a combination or conspiracy, the contention is that they must be proceeded against separately. One of the bills, and perhaps all, contains the allegation that all of these defendants have been joined because their business

is identical and to prevent a multiplicity of actions. On the hearing of the demurrers most of the defendants were represented by the same counsel, the other defendants not appearing, and they make the same defense, namely, that the allegations of the bills afford no ground for equitable relief. It is manifest, therefore, that if separate actions are brought by each complainant against the several defendants, each complainant must bring 15 or 20 suits, and that about 75 bills must be filed by the four complainants, each of which will involve the same questions and present a common point for litigation. It is not probable that, if that number of actions were instituted, there would be more than one trial, since the decision of one case would determine the others, and it will not be presumed that counsel for the defendants expect that the court would permit its time to be needlessly consumed by the formal trial of each action. Under these circumstances, should the plea of multifariousness be sustained, and the complainants required to file the number of suits above stated?

In a recent decision (Hale v. Allinson, 188 U. S. 56, 77, 23 Sup. Ct. 244, 47 L. Ed. 380) Mr. Justice Peckham, after considering the question of multifariousness and the various conflicting decisions on that subject, said that when the question arose—

"Each case, if not brought directly within the principle of some preceding case, must, as we think, be decided upon its own merits, and upon a survey of the real and substantial convenience of all parties, the adequacy of the legal remedy, the situations of the different parties, the points to be decided, and the result which would follow if jurisdiction should be assumed or denied; these various matters being factors to be taken into consideration upon the question of equitable jurisdiction on this ground, and whether within reasonable and fair grounds the suit is calculated to be in truth one which will practically prevent a multiplicity of litigation, and will be an actual convenience to all parties, and will not unreasonably overlook or obstruct the material interests of any."

In Kelley v. Boettcher, 29 C. C. A. 14, 85 Fed. 55, 64, it was said, in substance, that there is no fatal misjoinder of causes of action in a bill in equity, when the bill presents a common point of litigation, and the decree made thereon will affect the whole subject-matter and settle the rights of all parties to the suit.

Looking at the question above proposed from the standpoint of convenience, as may be done, it is manifest that it should be answered in the negative. It is too plain for serious controversy that the convenience of all parties, including the defendants and the court in which the cases are pending, will be subserved by allowing the actions to proceed against the defendants collectively. Nor is it perceived that the substantial rights of any of the defendants will be jeopardized by so doing. It is not suggested that they have separate defenses to make, and, even if a separate defense does exist in favor of any defendant, it can be urged with the same facility and effect in the present suits as if such defendant was sued separately, and probably at less cost. Indeed, the court feels persuaded that the plea of multifariousness is urged mainly to delay a final hearing, rather than to enable the defendants to make a defense on the merits, which they can better make if they are sued separately. It may be conceded that persons ought not to be called upon to make a defense to actions

against third parties, when the cause of action is one with which they have no concern, and where they are in the attitude of idle spectators of the controversy; but where the cause of action is one in which they have an immediate interest, because a like cause of action exists against themselves, to which they make the same defense as others will make, and by joining them with others the convenience of everybody, including the court, is subserved, and the rights of everyone may be safeguarded and valuable time saved, no reason is perceived why they may not be joined, there being no hard and fast rule of law which forbids. Such is the case at bar. The defendants have a common interest in the questions to be litigated, and it is desirable that they should be heard and determined in a single trial.

The demurrers to the respective bills are accordingly overruled.