PENNSYLVANIA CO. v. BAY et al.

(Circuit Court, N. D. Illinois, E. D. September 19, 1906.)

No. 27,261.

1. EQUITY—MULTIFARIOUSNESS OF BILL—JOINDER OF DEFENDANTS.

A bill by a railroad company for an injunction to restrain brokers from dealing in special nontransferable tickets issued by it is not multifarious, because a number of defendants are joined who have no connection with each other, where all are engaged in the same business, and are alike interested in the questions at issue and the joinder will save a multiplicity of suits.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, §§ 371–379 ]

2. INJUNCTION—JURISDICTION OF EQUITY—RESTRAINING BROKERS FROM DEAL-ING IN NONTRANSFERABLE RAILROAD TICKETS.

A railroad company has a present property interest in the right to issue special nontransferable tickets and to have the same maintained as nontransferable, whether such tickets are already issued or are to be issued from time to time in the future as its business or the needs of the public may require, and may maintain a suit in equity to protect such right by injunction against brokers who are engaged in the business of buying such tickets and reselling them to others, to be used in violation of their terms and to the irreparable injury of complainant; there being no adequate remedy at law.

In Equity. Suit for injunction.

See 138 Fed. 203.

George Willard, F. R. Babcock, and Brode B. Davis, for complainant.

Moses, Rosenthal & Kennedy and Thomas W. Brown (Moritz Rosenthal, of counsel), for certain defendants.

J. W. Loeb, for certain defendants.

KOHLSAAT, Circuit Judge. Complainant files its bill to restrain defendants from dealing now or hereafter in those railroad tickets and other documentary evidences issued and to be issued by the railroad company and made exchangeable for passage upon its trains, which purport, upon their face, to be nontransferable.

From the bill it appears that there are in this country four associations known, respectively, as the "American," "National," the "American Travelers'," and the "Guarantee" Ticket Brokers' Associations, the members of which, known as "ticket brokers" or "scalpers," have offices in all the principal cities of the United States; that defendants are all members of one or the other of said associations; that they act in concert and stand by each other; that all tickets sold by any one belonging to the association are guarantied by the association; that complainant has issued and intends in the future, from time to time, to issue, as occasion requires, special tickets to persons desiring to attend conventions upon its lines and also upon connecting lines, and for other particular occasions involving the accommodation of large numbers of people, for which a charge is in different ways made at a lower price than its regular rates; that such practice is essential to the carrying on of its business as a common carrier; that all of these tickets or certificates are made nontransferable, and their use is limited to the

persons to whom they are issued; that defendants are engaged in defeating the precautions taken by complainant to limit the use thereof to the party to whom they were issued, and to that end in various ways procure the false impersonation of the original party by others, and thereby secure to such impersonator transportation upon the unused portion of such ticket or certificate at a rate much less than the regular rate; that in this way defendants defraud complainant and harass the traveling public; that, whenever discovered, the tickets or certificates or whatever is used are taken up, and the holder required to pay full fare or leave the train. The bill then recites the present and intended future issuance of a great number of such tickets to those desiring to attend the St. Louis Fair, commemorating the Louisiana Purchase, giving a stop-over privilege at Chicago; that the practice of defendants is contrary to the laws of Illinois and of the United States; that, unless restrained, defendants and each of them will, in the ordinary course of their business, engage in the said unlawful traffic in the St. Louis Fair tickets or certificates, all of which are by their terms non-transferable; that it is not possible to detect the fraud in all cases; that, owing to the nonresidence of many of the parties using such tickets or certificates, it is impracticable to prosecute them, and the number of cases is so great that it would be impossible to obtain any adequate redress by means of suits at law. It further alleges that attempts to detect the said frauds will cause constant, continuous, and irremediable annoyance and injury to complainant, for which it has no adequate remedy at law; that all ticket brokers are practically in combination or conspiracy to defraud railroad companies; that said defendants "have been joined herein because their business and transactions complained of are in act, purpose, and effect identified, and in order to prevent a multiplicity of suits, the same relief being sought as to each and all of them." The bill further avers that defendants "are engaged in the business of selling and propose to continue in the business of selling and regularly dealing in said nontransferable tickets issued for transportation over your orator's railroad."

The defendants, after certain preliminary proceedings, filed an answer, and the cause was referred to a master to take proofs and report his findings of fact and law. In the meantime defendants consented to the entry of a preliminary injunction, limited to nontransferable tickets or certificates given on account of the St. Louis Fair. The cause is now before the court on exceptions to the master's report. A multitude of exceptions were taken to questions and answers, which tend merely to advise the court of the general character of the defendants' business methods. They are not such as work any damage or wrong to them, when the cause is before the court without a jury, and they will, therefore, be overruled. For defendants it is contended that no case is made against them which justifies their joinder herein. As before stated, they were made parties, it is claimed, because their methods are alike with regard to complainant's business, and to avoid a multiplicity of suits. The joinder does not rest upon conspiracy or combination to injure complainant, though the bill charges that their acts practically amount to that. As stated above, it is alleged in the bill and abundant-

ly established by the evidence and the report of the master that defendants stand in the attitude of waiting until special nontransferable tickets or certificates are issued by complainant upon which they may seize, contrary to law, and traffic in them to their own advantage, and to the injury of complainant. It does not appear directly that they have all done so; but that the business is such that in pursuing it they must needs have done so and continue so to do.

It seems to be pretty well established by the authorities that the thing sought to be protected in such suits is the right of the railroad company to issue nontransferable tickets and reserve to itself the advantage, whatever it may be, of having them maintained as nontransferable in fact. It is easy to understand how there may result very material benefit to the railroad from such a limitation, as well as very great injury from the anticipated action of defendants with reference thereto. It is not a fair or reasonable construction to hold that this suit is brought merely to protect the various limited contracts for transportation which may be issued by the railroad company from time to time. It appears from the evidence that the accommodation of the traveling public makes it a matter of necessity that special occasion tickets be issued. It is justified by long usage and popular demand. It is an indispensable incident to the exercise of their charter privileges. It is a present right to a future benefit. This proposition finds legal sanction in numerous cases. In Scott v. Donald, 165 U. S. 107, 17 Sup. Ct. 262, 41 L. Ed. 648, it was held that the court had jurisdiction to restrain seizures under the South Carolina dispensary law threatened against future importations of liquors, upon the ground that the thing to be protected was the right to import, as part of complainant's business. Judge Thayer ruled in the case of Illinois Central Railroad v. Caffrey et al. (C. C.) 128 Fed. 770, that the action of ticket brokers in regard to these special tickets is an interference with the rights of the railroad companies, and that a court of equity has a right to intervene. The same position was taken by Judge Dixon in Atchison, Topeka & Santa Fé R. R. Co. v. Kirby et al., unreported, so far as I am advised. To the same effect is the opinion of the court in Schubach v. McDonald (Mo. Sup.) 78 S. W. 1020, 65 L. R. A. 136. "The right asserted by the railroads and denied and threatened by the ticket brokers," says the court, "is a right that is natural to mankind. It is a right that the Legislature of this state and the Congress of the United States have expressly conferred upon the corporation railroads, and which the Supreme Court of the United States has expressly declared they possess. It is a right that is guarantied to every man by the organic law of the land—a right to contract concerning a legal subject-matter. Such right is property within the meaning of the law. The ticket brokers deny the existence of that right and threaten to invade it. The law affords no adequate remedy for such an infringement of such a right."

In National Telegraphic News Company v. Western Union Telegraph Company, 119 Fed. 299, 56 C. C. A. 198, 60 L. R. A. 855, it was said by Judge Grosscup, speaking for the Court of Appeals for this circuit:

"What is called 'tangible property' has come to be, in most great enterprises, but the embodiment, physically, of an underlying life—a life that, in its con-

tribution to success, is immeasurably more effective than the mere physical embodiment. * * * It is needless to say that to every ingredient of property thus made up—the intangible as well as the tangible, that which is discernible to mind only, as well as that susceptible to physical touch—equity extends appropriate protection."

The cases of Louisville & Nashville R. R. Company v. Bitterman (decided March 27, 1906, by the Court of Appeals for the Fifth Circuit) 144 Fed. 34, B. & O. R. R. Co. v. Sayre et al. (superior court of Cincinnati), and numerous other decisions of the courts are to the same effect. The right to all manner of legitimate railroad business, including as a vital part thereof the right to issue nontransferable tickets as it may elect from time to time, and have them maintained as such, is undoubtedly inviolable in complainant. It is its pasture land and defendants have been grazing in it, and threaten to do so again, and as often as the same presents good grazing. The facts would seem to bring the case within the decision in Smith v. Bivens (C. C.) 56 Fed. 352. While the stipulation upon which the preliminary order was entered reserves to defendants the right "to object to the power and jurisdiction of the court in the premises to grant any or all of the relief prayed for in and by said bill," yet it fairly waives the question of multifariousness; otherwise no order could have been entered.

It goes without saying that complainant would be compelled to bring innumerable suits at law in order to protect its rights, if there were no jurisdiction in equity to grant the relief here sought. The utter withdrawal of all special rate tickets would seem to be the only solution of the situation. There would practically exist a wrong without a remedy. If, then, complainant has a present property interest in the right to issue these tickets from time to time (and the reasoning of the cases before cited is clearly to that effect), it follows that the relief here sought is not merely the protection of these special tickets, but of the right to issue them. The railroad business of the complainant, including all the varied avenues through which it lawfully expresses itself and operates, is a unit. This unit, with its right to transact the business here sought to be protected, is a substantial property interest, and is now before the court, as a court of equity, asking for that relief which equity is so well equipped to decree and enforce. In Hale v. Allinson, 188 U. S. 77, 23 Sup. Ct. 244, 47 L. Ed. 380, it is said that, where there is a community of interest among a number of defendants in the questions of law and fact involved in the great controversy, jurisdiction exists to maintain suit against a number of persons to prevent a multiplicity of suits. To the same effect are Wyman v. Bowman, 127 Fed. 263, 62 C. C. A. 189, and the cases therein cited. And in Hayden v. Thompson, 71 Fed. 60, 17 C. C. A. 592, and Salvage v. Hyde, 5 Maddox (Eng. Chan.) 146, it is declared that no bill is multifarious which presents a common point of litigation, the decision of which will affect the whole subject-matter and settle the rights of all the parties. To the same effect is Nashville, C. & St. L. Ry. v. McConnell (C. C.) 82 Fed. 65.

It is well settled that the question of multifariousness is largely within the sound discretion of the court, and that each case must depend upon its own circumstances. Counsel for defendants himself

says; on page 147 of his brief, that the only question involved in the case is the issue of an injunction forever restraining the defendants from dealing in any tickets of the complainants, thus appealing for a decision upon the power of the court to enjoin defendants from dealing in nontransferable tickets, and not depending upon the point under consideration. Whether this be so or not, I am of the opinion that the bill is not multifarious. This objection is usually reached on demurrer, but in the present case it is urged in exceptions to the report as appearing from the evidence, as well as saved in the answer. The exception is overruled.

Defendants interpose the defense of laches. The evidence does not justify that defense. The acts complained of are in violation of law and a fraud upon complainant. Defendants will not be allowed to set up such a plea under the circumstances of this case.

This brings us to the crux of the present proceeding, and that is the power of the court to enjoin defendants from dealing in the future in special nontransferable tickets not yet issued, as to which the special occasion for their issuance has not arrived or even been specifically conceived. For a time the power of the railroads to issue such tickets good only in the hands of the first purchaser was questioned by the courts; but, as occasions for special accommodations on the part of the traveling public increased in number, the necessity for them was recognized, and now the courts of almost every state in the Union and the Supreme Court of the United States have held them valid. With a few exceptions, the states have enacted laws for their protection and for the prosecution of those engaging in the purchase, sale, and manipulation of such tickets.

Defendants urge that the relief sought by the bill and recommended by the master trespasses upon the powers of the legislative department of the government; that it is an attempt to lay down and enforce a cause of action. In a limited sense, every injunctional order looking to the prevention of wrongful acts against property is necessarily a rule of action. The decision of the Supreme Court of the United States in N. Y. & C. Ry. Co. v. Interstate Commerce Commission, 200 U. S. 404, 26 Sup. Ct. 272, 50 L. Ed. 515, is not at all here in point. There it was sought, as the court says, to remove the carrier from the protection of the law of the land, and require it thereafter to conduct all its business under the jeopardy of punishment for contempt for violating a general injunction. The proceeding was instituted under the interstate commerce act. It was not a proceeding to protect property rights in existence. It was an attempt to re-enact the statute into a decree. The case lacks every element urged in support of the present suit, and manifestly could not have been sustained by the Supreme Court. It is true that the New York courts and some others have taken a position antagonistic to that here stated, while those above cited and many others have adhered to the principles upon which it is now sought to decide this case. Conceding, however, that the suit is one to protect the right of complainant to issue limited tickets from time to time, and that defendants are threatening to invade that right, it seems to me the reasoning of the courts in the St. Louis World's Fair

Cases and of the other courts above quoted from clearly answers and disposes of the objections urged to the granting of this relief by the New York courts. The attempt of defendants' counsel to discredit the opinions of the several courts which have rendered these decisions on the ground of popular demand and self-interest does not appeal to the judgment of the court. The opinions speak for themselves. The question involved is a large one. It affects both the railroads and the public. It is now before the Supreme Court, and will be there finally settled. In view of this fact, it was the purpose of the court to hold the case until that court has disposed of the matter before it; but at the request of counsel for both parties hereto, this decision is rendered.

The court is of the opinion that equity has full jurisdiction at this time to restrain defendants from dealing in complainant's nontransferable tickets issued and to be issued upon the broad propositions (1) that complainant has a present property interest in the right to issue such evidences of transportation, whether already issued or to be issued from time to time in the future, and to have the same maintained as nontransferable; and (2) that defendants are threatening to seize upon and deal in, for their own advantage, such nontransferable tickets, to the wrong and in fraud of complainant's present business rights contrary to law.

The exceptions to the report are overruled, the report is confirmed, and a perpetual injunction granted as prayed. Complainant's counsel may prepare and present a decree in accordance herewith.