FIDELITY TRUST & SAFE DEPOSIT CO. et al. v. ARCHER.

(Circuit Court of Appeals, Third Circuit. October 6, 1909.
Rehearing Denied April 2, 1910.)

No. 35 (1,211).

CORPORATIONS (§ 259*)—JURISDICTION—ADEQUATE REMEDY AT LAW—PRE-
VENTING MULTIPLICITY OF SUITS—SUITS BY RECEIVER AGAINST STOCK-
HOLDERS.

A federal court of equity is without jurisdiction of a suit by the re-
ceiver of an insolvent corporation against numerous stockholders to en-
force payment of an assessment of a fixed sum per share on its stock,
made by authority of a court in another jurisdiction in a suit to wind up
the affairs of the corporation to which suit the defendant stockholders
were not individually parties, either on the ground of preventing a mul-
tiplicity of suits, or on the ground that it is ancillary to the main suit,
where it does not appear that there is any ground of defense common to
the defendants, and the bill does not pray for any equitable relief, but
merely seeks to collect from each defendant a definite sum as the assess-
ment against his stock.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1059–1067;
Dec. Dig. § 259.*

Stockholders' liability to creditors in equity, see notes to Rickerson
Roller-Mill Co. v. Farrell Foundry Co., 23 C. C. A. 315; Scott v. Latimer,
33 C. C. A. 23.]

Appeal from the Circuit Court of the United States for the Eastern
District of Pennsylvania.

In Equity. Suit by F. Morse Archer, who was substituted for
Arthur K. Brown, as receiver of the American Alkali Company,
against the Fidelity Trust & Safe Deposit Company, Annie E. Sinnott,
Mary E. Sinnott, John Sinnott, and Walter George Smith, executors
of the will of Joseph F. Sinnott, deceased. Decree for complainant, and
defendants appeal. Reversed.

For opinions below, see 156 Fed. 697; 166 Fed. 488.

Ira J. Williams, for appellants.
Reynolds D. Brown, for appellee.

Before GRAY and BUFFINGTON, Circuit Judges, and BRAD-
FORD, District Judge.

BRADFORD, District Judge. This is an appeal by Fidelity Trust
and Safe Deposit Company, Annie E. Sinnott, Mary E. Sinnott, John
Sinnott and Walter George Smith, Executors of Joseph F. Sinnott,
deceased, from a decree of the circuit court of the United States for
the eastern district of Pennsylvania, in a suit brought by Arthur K.
Brown, surviving receiver of American Alkali Company, against the
appellants and a large number of other defendants as preferred stock-
holders of that company, for the purpose of collecting an assessment
for each share of preferred stock held by them in that company. A
decree against the appellants was entered December 30, 1908, direct-
ing the payment by them, as the holders of 1,000 shares of preferred

stock, of $2,910, being an assessment of $2,50 per share and the interest thereon from April 5, 1906. There are numerous assignments of error, the first of which is to the effect that the court below had no equitable jurisdiction in this case, there being, as alleged, an adequate remedy at law. We shall now consider this point and in order satisfactorily to deal with it it is necessary to allude to the circumstances under which the suit was brought. The American Alkali Company was incorporated under the laws of New Jersey May 4, 1899, for the purpose, among other things, of manufacturing, buying, selling, dealing in and using alkalies and chemicals of all kinds and obtaining letters patent for any invention in connection with its business. Its total authorized capital stock amounted to $30,000,000, divided into 600,000 shares of the par value of $50 each, of which 120,000 were preferred stock and the remaining 480,000 common stock. The certificate of incorporation provided that:

"After payment of $10 per share on the preferred stock, the subscribers thereto shall not be liable for any balance of their subscription excepting upon such shares as shall stand of record on the books of the company in their names at the time when any subsequent assessments or calls are made, but the holders of such shares of record on the books of the company at that time, and they only, shall be liable for the same."

It further provided that the corporation might commence business after $2,000 of the capital stock had been subscribed for. Walter A. Kirkpatrick on behalf of himself and all other creditors and stockholders of the American Alkali Company filed a bill in equity against that corporation September 9, 1902, in the circuit court of the United States for the district of New Jersey, setting forth, among other things, that he was the registered owner of one hundred shares of its capital stock, and that the corporation was insolvent, and praying, among other things, that a receiver of the corporation be appointed with power to collect and take possession of all its property, and to exercise all rights of ownership with respect to shares of stock owned by and registered in its name, including the right to vote thereon, collect and receive dividends and income therefrom and apply the same as directed by the court; that the rights of the complainant and all other stockholders and creditors of the corporation be ascertained and that all the assets of the corporation be marshaled and administered. On the above bill the court, September 9, 1902, appointed Arthur K. Brown and Henry I. Budd, Jr., receivers of the corporation. The interlocutory decree appointing the receivers authorized them to exercise "all the general powers of receivers in cases of this kind," and contained other provisions touching their power and authority not necessary to mention in this connection. The receivers so appointed duly qualified and entered upon the discharge of their duties. September 11, 1902, Kirkpatrick, on whose bill receivers were appointed in New Jersey, as above mentioned, filed a bill against the American Alkali Company in the circuit court of the United States for the eastern district of Pennsylvania, which, after setting forth the proceedings in New Jersey, prayed the appointment of receivers of the corporation for Pennsylvania, and contained, among others, the following prayer:

179 F.—3

"(3) That your Honorable Court will make such orders and decrees, preliminary and final, as are prayed for in said bill by your complainant, in the circuit court for the district of New Jersey, and that your Honors will also make all such other and necessary orders, judgments and decrees as may be required in aid of said bill; and that your Honors will take ancillary jurisdiction with said circuit court of the United States for the district of New Jersey, and will give your complainant all the relief which may be necessary to accomplish the purpose of filing said bill; and finally that your Honors will order and direct the receivers appointed in this suit as herein prayed, to account to the receivers appointed as aforesaid in the United States Circuit Court for the district of New Jersey for all sums which shall be received by them after the costs and expenses incident to this suit, and all reasonable allowance to complainant by way of counsel fees shall have been provided for and paid."

On this bill Brown and Budd were, September 11, 1902, appointed receivers for Pennsylvania with powers similar, save as to territory, to those conferred on them in New Jersey. The court, however, made no order or decree in conformity to the above quoted prayer. The receivers duly qualified and entered upon the discharge of their duties in Pennsylvania. It appears from the record that September 12, 1901, the board of directors of the American Alkali Company, for the purpose of providing funds for the completion of its then works, the building of additional works, and furnishing working capital, by resolution laid an assessment of $10 per share on each share of the preferred stock, payable in four instalments of $2.50 each respectively October 21, 1901, January 21, 1902, April 21, 1902, and July 21, 1902. September 25, 1901, the time for paying the first instalment was extended to November 11, 1901. It further appears that Joseph F. Sinnott was an original subscriber for 2,000 shares of the preferred stock of the corporation of 1,000 of which he became the registered owner under certificates Nos. 141 and 142, each for 500 shares, dated May 31, 1899. The shares represented by these two certificates were held and owned by him until his death and by his executors thereafter until and after the bringing of this suit October 13, 1906. The decedent had full knowledge of the laying of the above mentioned assessment at or about the time it was laid. Budd having died, Brown as surviving receiver applied July 14, 1905, to the circuit court in New Jersey for an order authorizing an assessment of $2.50 per share upon the holders of the preferred stock who had not paid the first instalment of the assessment laid September 12, 1901, and the court, August 31, 1905, granted his application. The assessment thus authorized was made payable on or before October 4, 1905, and subsequently the time was extended to April 5, 1906. In September, 1906, the surviving receiver presented his petition to the court below setting forth, among other things, as follows:

"Your petitioner notified the holders of the preferred stock of the American Alkali Company who had not paid the assessment levied by the board on September 12, 1901, of the assessment authorized by the court on August 31, 1905, and has collected from some of the holders of said preferred stock the assessment thus authorized by the court. There are, however, a large number (aggregating between 100 and 200) of the holders of the preferred stock who have not paid the said assessment, and who are residents of the eastern district of Pennsylvania, and therefore within the jurisdiction of your Honorable Court. Against most of these persons either the American Alkali Company itself, be-

fore the date of the day of the appointment of the receivers in September, 1902, or the receivers after their appointment, have instituted separate suits at law in order to recover the assessment made by the board on September 12, 1901, and many of these suits in which the plaintiffs have not hitherto been able to reduce the claims to judgment, are still pending in the various courts in the eastern district of Pennsylvania. Your petitioner is now advised by counsel that rather than press all of the existing suits (to which certain technical defences growing out of the form of the assessment by the board have been made), and rather than bring new and separate suits against the various holders of the preferred stock, it would be much more advantageous and expeditious and tend to a prompter termination of the receivership for him to file a single bill in equity in this case against all of the holders of the preferred stock who are residents of the eastern district of Pennsylvania who can be properly included in such a bill, and thus avoid much litigation, delay and expense,"

and praying

"for leave to discontinue such of the pending suits at law against the various stockholders who have not paid the assessment as he may be advised by counsel, and for leave to file a single bill in equity in this cause against such holders of the preferred stock of the American Alkali Company who have not paid the assessment aforesaid as are residents of the eastern district of Pennsylvania, and as, in the opinion of counsel, should be included in such bill."

On this petition the court below, September 18, 1906, granted an order in conformity to its prayer, and pursuant to this order this suit was brought. The facts enumerated show that this suit, while not brought by petition but by bill, is nevertheless part and parcel of the proceedings theretofore instituted in Pennsylvania in aid of the proceedings had in New Jersey for winding up the affairs and distributing the assets of the American Alkali Company. If the bill as filed came within the equitable jurisdiction of the court below, that jurisdiction could not be defeated by subsequent payments of the assessment made by some of the defendants. Under these circumstances did or not the bill fall within the equitable jurisdiction of the court below? Aside from the prayer for further or other relief and for subpœna, the bill contains only the following prayer:

"That it be decreed that each of the defendants be ordered to pay to the plaintiff the assessment of $2.50 per share authorized by the United States circuit court for the district of New Jersey on August 31, 1905, and levied by plaintiff on September 19, 1905, upon the number of shares of preferred stock of the American Alkali Company set opposite their respective names, together with interest thereon from April 5, 1906."

Waiving for present purposes the question whether the assessment directed in New Jersey August 31, 1905, and there levied by the surviving receiver September 19, 1905, was operative with respect to preferred stockholders residing in Pennsylvania, and not within the jurisdiction of the circuit court in New Jersey, and on the assumption that the above question should be answered in the affirmative—a point on which we express no opinion—the claims made by the bill against the defendants are legal, in contradistinction to equitable demands, for which actions at law might be brought against the several defendants respectively. The bill does not pray for an account, nor does it involve contribution of any kind between the defendants. If it can be sustained the equitable jurisdiction must rest upon the avoidance of a

multiplicity of suits and special circumstances rendering a resort to equity proper. While it may be urged that it would be of advantage that the claims made against the several defendants should all be embraced in one suit to prevent multiplicity, it may also, on the other hand, be urged that such a suit, while single in form, is but a conglomeration of suits for legal demands involving different issues and different proofs and resulting in saving, if any, but little expense. Nor does the fact that this bill is ancillary to the receivership proceedings in Pennsylvania and New Jersey furnish any justification, so far as jurisdiction is concerned, for resorting to a suit in equity rather than having recourse to actions at law. For the usual jurisdictional requisites of diversity of citizenship and a controversy involving a jurisdictional amount have no application to ancillary proceedings whether in equity or at law.

At the threshold of the discussion of the question of jurisdiction we are confronted with the case of Hale v. Allinson, 188 U. S. 156, 23 Sup. Ct. 244, 47 L. Ed. 380, which went up from this circuit. In that case it was held, among other things, that a receiver of an insolvent Minnesota corporation, appointed by a court of equity in that state, could not maintain a single suit in equity in the circuit court of the United States in Pennsylvania against all of the Pennsylvania stockholders of the corporation to enforce the statutory liability of each defendant as a stockholder, on the ground that a single action would prevent a multiplicity of suits, or on the ground that it was an ancillary or auxiliary proceeding brought in aid of and to enforce an equitable decree in the proceedings in Minnesota, in which the Pennsylvania stockholders had been named as defendants with all the other stockholders, the Pennsylvania stockholders not having been served with process and not having appeared. The court in discussing the first point said:

"Cases in sufficient number have been cited to show how divergent are the decisions on the question of jurisdiction. It is easy to say it rests upon the prevention of a multiplicity of suits, but to say whether a particular case comes within the principle is sometimes a much more difficult task. Each case, if not brought directly within the principle of some preceding case, must, as we think, be decided upon its own merits and upon a survey of the real and substantial convenience of all parties, the adequacy of the legal remedy, the situations of the different parties, the points to be contested and the result which would follow if jurisdiction should be assumed or denied; these various matters being factors to be taken into consideration upon the question of equitable jurisdiction on this ground, and whether within reasonable and fair grounds the suit is calculated to be in truth one which will practically prevent a multiplicity of litigation and will be an actual convenience to all parties, and will not unreasonably overlook or obstruct the material interests of any. The single fact that a multiplicity of suits may be prevented by this assumption of jurisdiction is not in all cases enough to sustain it. It might be that the exercise of equitable jurisdiction on this ground, while preventing a formal multiplicity of suits, would nevertheless be attended with more and deeper inconvenience to the defendants than would be compensated for by the convenience of a single plaintiff, and where the case is not covered by any controlling precedent the inconvenience might constitute good ground for denying jurisdiction. We are not disposed to deny that jurisdiction on the ground of preventing a multiplicity of suits may be exercised in many cases in behalf of a single complainant against a number of defendants, although there is no common title nor community of right or interest in the subject matter among such defendants, but where there is a community of interest among

them in the questions of law and fact involved in the general controversy. Is there, upon the complainant's theory of this case, any such common interest among these defendants as to the questions of fact that may be put in issue between them and the plaintiff? Each defendant's defence may, and in all probability will, depend upon totally different facts, upon distinct and particular contracts, made at different times, and in establishing a defence, even of like character, different witnesses would probably be required for each defendant, and no defendant has any interest with another. * * * The facts surrounding the present case and the reasons for holding that they do not bring it within the principle of preventing a multiplicity of suits are so well stated in the opinion of McPherson, District Judge, in this case [C. C.] 102 Fed. 790, that we quote the same. After speaking of the alleged conclusiveness of the Minnesota decree upon the question therein decided, the judge continued:

" 'Thereafter a different question arose for determination, namely, can the assessment be lawfully enforced against the individuals charged therewith? And in this question the interest of each stockholder is separate and distinct. The bill asserts the conclusiveness of the Minnesota decree upon the defendants, so far as the necessity for the assessment and the amount charged against each stockholder are concerned. Bank v. Farnum, 176 U. S. 640 [20 Sup. Ct. 506, 44 L. Ed. 619]. Assuming that position to be sound (and, if I do not so assume it; if these questions are still open for determination, so far as the Pennsylvania stockholders are to be affected—the bill must fail for want of necessary parties), it is clear that only two classes of questions remain to be decided: The first is whether a given stockholder was ever liable as such; and the second is whether, if he were originally liable, his liability has ceased, either in whole or in part. Manifestly, as it seems to me, the defendants have no common interest in these questions, or in the relief sought by the receiver against each defendant. The receiver's cause of action against each defendant is, no doubt, similar to his cause of action against every other, but this is only part of the matter. The real issue, the actual dispute, can only be known after each defendant has set up his defence, and defences may vary so widely that no two controversies may be exactly or even nearly alike. If, as is sure to happen, differing defendants are put in by different defendants, the bill evidently becomes a single proceeding only in name. In reality it is a congeries of suits with little relation to each other, except that there is a common plaintiff, who has similar claims against many persons. But as each of these persons became liable, if at all, by reason of a contract entered into by himself alone, with the making of which his co-defendants had nothing whatever to do, so he continues to be liable, if at all, because he himself, and not they, has done nothing to discharge the liability. Suppose A to aver that his signature to the subscription list was a forgery; what connection has that averment with B's contention, that his subscription was made by an agent who had exceeded his powers? or with C's defence, that his subscription was obtained by fraudulent representations? or with D's defence, that he has discharged his full liability by a voluntary payment to the receiver himself? or with E's defence, that he has paid to a creditor of the corporation a larger sum than is now demanded? These are separate and individual defences, having nothing in common; and upon each, the defendant setting it up is entitled to a trial by jury, although it may be somewhat troublesome and expensive to award him his constitutional right. But, even if the ground of diminished trouble and expense may sometimes be sufficient, I should still be much inclined to hesitate before I conceded the superiority of the equitable remedy in the present case. Such a bill as is now before the court is certain to be the beginning of a long and expensive litigation. The hearings are sure to be protracted. Several, perhaps many, counsel will no doubt be concerned, whose convenience must be consulted. The testimony will soon grow to be voluminous. The expense of printing will be large. The costs of witnesses will not in any degree be diminished, and, if some docket costs may be escaped, this is probably the only pecuniary advantage to be enjoyed by this one cumbersome bill over separate actions at law.' We are in accord with the views thus expressed, and we therefore must deny the jurisdiction of equity, so far as it is based upon the asserted prevention of a multiplicity of suits."

In discussing the contention that the suit should have been maintained on the ground that it was an ancillary proceeding the court said:

"All the non-resident stockholders were but nominal parties in the Minnesota suit. * * * The complainant claims that the non-resident stockholders are bound because the corporation was a party, not because they were parties to the suit. There is no decree or judgment, therefore, against the stockholders who were non-residents. The claim that they are bound by certain findings of fact by the court, because of the corporation being a party and in law representing them to that extent, assuming it for this purpose to be well founded, is far from transforming a decree against resident stockholders into one against non-residents who were not parties to the action. Even assuming that the decree concludes them upon certain facts found in that action where there was no decree against them, still, another action in another jurisdiction to enforce their liability as originally created by statute cannot within any reason be said to be one to enforce the former judgment. Indeed it is because of the very fact that no judgment was or could be obtained against the non-resident stockholders in the Minnesota suit that the Pennsylvania Federal court is asked to exercise its jurisdiction and give judgment against the defendants on their statutory liability."

The case of Hale v. Allinson has never, so far as we are aware, been overruled; nor have the views expressed in the opinion been questioned by the Supreme Court. That case supports the contention that the court below was without authority to entertain the present bill, unless the case before us can be substantially distinguished from it in principle. We shall refer to some of the cases bearing upon the subject. In White v. Ewing, 159 U. S. 36, 15 Sup. Ct. 1018, 40 L. Ed. 67, the receiver of an insolvent corporation presented a petition stating that a large proportion of its assets consisted of promissory notes given for land purchased from it, upon which liens had been retained to secure their payment, and asked and obtained leave to proceed by bill or petition in a single suit against all the persons indebted to the corporation on such notes. The receiver pursuant to this leave filed a bill against all of such alleged debtors, in which it was, among other things, alleged that special liens were retained in each case in the deed to the purchaser to secure the deferred payments of the purchase money, and the court was asked to enforce such liens by sale of the lands for the satisfaction of the balance of the purchase money due separately from each and all of the defendants upon their respective notes. No exception was taken to the form of the bill by demurrer or otherwise; and nearly all of the defendants answered denying their liability. A decree having been entered for the complainant, an appeal was taken to the circuit court of appeals and the following question was certified to the Supreme Court:

"Had the circuit court of the United States in a general creditor's suit properly pending therein for the collection, administration, and distribution of the assets of an insolvent corporation, the jurisdiction to hear and determine an ancillary suit instituted in the same cause by its receiver in accordance with its order, against debtors of such corporation, so far as in said suit the receiver claimed the right to recover from any one debtor a sum not exceeding $2,000."

This question was answered in the affirmative; the court, among other things, saying:

"While the receiver prayed in his petition to bring in all the debtors by bill or petition in one suit, alleging that it was so requested by creditors, in

order to avoid the expense of a separate suit against each; and the bill was brought in that form against 130 defendants, who were charged to be severally indebted upon notes given for lots of land purchased from the company, no exception was taken to the form of the bill by demurrer or otherwise, but the defendants answered, denying their liability. The question certified does not, as we understand it, demand the opinion of this court as to whether a single bill against all these defendants would lie for the amounts severally due by them (upon which point we do not feel called upon to express an opinion); but whether so far as in said suit the receiver claimed the right to recover from any one debtor a sum not exceeding $2,000, the court has jurisdiction to render a judgment against them."

White v. Ewing is different from the case before us in several particulars. It involved the enforcement of liens against real estate which is a subject of equitable cognizance. It passed upon the right of the receiver to recover from any one debtor a sum not exceeding $2,000; the amount decreed against the appellants here being $2,500 with interest from a certain date. No question was raised whether a single bill against all of the defendants would lie for the amounts severally due from them, on which point the Supreme Court expressly refrained from expressing an opinion. It is evident that White v. Ewing is not an authority to support the contention of the appellee. Wyman v. Bowman, 127 Fed. 257, 62 C. C. A. 189, decided by the circuit court of appeals for the eighth circuit is one of the leading cases on the subject of equitable jurisdiction founded on the prevention of a multiplicity of suits. In that case it was held that a receiver of an insolvent corporation of Nebraska properly filed a single bill against a number of defendants to enforce the collection of their unpaid subscriptions to the stock of that corporation. It was held that where there is a common and decisive point of litigation between a complainant and several defendants separately liable a bill in equity may lie against all of them. But the court carefully distinguished that case from such a case as that before us, and in referring to Hale v. Allinson, among other things, said:

"In that case there was no community of interest among the defendants in the controversies presented for litigation, and the convenience of the complainant in pursuing the single suit was overcome by the inconvenience of such a course to the several defendants. In this case there is a community of interest among the defendants in every question of law and of fact presented by the controversies, and the convenience of all parties will be better served by a determination of them here in a single suit, than by repeated decisions of them in nine separate actions at law. * * * In the suit under consideration, every point of litigation between complainant and the defendants is common to all the latter. * * * The same facts proved by the same evidence condition the defenses of each of the defendants, and the same questions of law are presented by each of them for our determination."

In Bitterman v. Louisville & Nashville R. R. Co., 207 U. S. 205, 28 Sup. Ct. 91, 52 L. Ed. 171, a bill had been filed for an injunction to restrain a number of ticket brokers or scalpers from dealing in nontransferable round trip tickets over the lines of the railroad company. There was no connection or common interest in the suit between the defendants. The case came before the Supreme Court on certiorari to the circuit court of appeals which decreed that the defendants should be enjoined. The Supreme Court in affirming the decree rec-

ognized and approved the distinction made by the same court in Hale v. Allinson. It said:

> "The proposition that the bill was multifarious because of the misjoinder of parties and causes of action was not assigned as error in the circuit court, of appeals, and, therefore, might well be held not to be open. But passing that view, we hold the objection to be untenable. The acts complained of as to each defendant were of a like character, their operation and effect upon the rights of the complainant were identical, the relief sought against each defendant was the same, and the defenses which might be interposed were common to each defendant and involved like legal questions. Under these conditions the case is brought within the principle laid down in Hale v. Allinson, 188 U. S. 56, 77 [23 Sup. Ct. 244, 47 L. Ed. 380]."

In Bailey v. Tillinghast, 99 Fed. 801, 40 C. C. A. 93, the circuit court of appeals of the sixth circuit held that the receiver of an insolvent national bank might maintain a suit in equity to enforce an assessment against stockholders, where such an assessment is less than the full amount of their liability and where the question of law involved is common to the defendants and rests upon substantially the same facts. The court said:

> "There is a common question in the case between the receiver and the defendants, namely, the question whether the latter were released from their stock subscription by the fact that, whereas the resolution for increasing the stock in the sum of $300,000 was that under which their subscription took place, yet subsequently, by proceedings to which they did not consent, the proposed increase was reduced to $150,000. The protest interposed by Bailey in behalf of himself and the other stockholders to the certification by the comptroller of the modified increase of the capital stock of the bank assumes that they stood on the common ground already stated. And these circumstances, namely, the great number of the parties on one side or the other, the identity of the question of law, and the similarity of the facts in the several controversies between the respective parties, are the basis on which the jurisdiction rests."

Pennsylvania Co. v. Bay (C. C.) 150 Fed. 770, and Illinois Cent. R. Co. v. Caffrey (C. C.) 128 Fed. 770, 775, and other cases unnecessary to cite, also support the proposition that a bill is not multifarious by reason of the joinder of many defendants not connected with each other where all are engaged in the same business and there is a common ground of defense in law and fact to the relief sought against them. But in the case now before us it does not appear that there was any common ground of law or of fact as between the defendants on which they stood by way of defense; and possibly each might urge by way of defense to the collection of the assessment facts and points of law variant from those relied on by any other defendant.

At this point it is material to consider whether the present bill prays relief against any one of the defendants of such nature as to require or justify a proceeding in equity rather than an action at law. As already stated the bill does not pray for or involve an accounting or contribution. It seeks simply the collection of legal pecuniary claims from the several defendants fixed in amount at the sum of $2.50 on each of the preferred shares held by them respectively. The object of the suit is to place in the hands of the receiver such moneys as he may be entitled by reason of the assessment to receive from them for the payment of the debts of the American Alkali Company.

The authorities clearly establish the principles which must determine whether in a given case a statutory liability of a stockholder or his liability for unpaid subscriptions or assessments on his stock should be enforced in equity or at law. In Pollard v. Bailey, 20 Wall. 520, 22 L. Ed. 376, an action at law had been brought by a creditor of an insolvent state bank against one of its stockholders to recover a claim he held against the bank. The charter provided that "individual stockholders, having shares in said bank, shall be bound respectively for all the debts of the bank in proportion to their stock holden therein." The court below gave judgment for the plaintiff, which was reversed by the Supreme Court; the latter court, among other things, saying:

"Each stockholder is bound for the debts in proportion to his stock. His liability is not limited to the par value of his stock, neither is he bound absolutely for the payment of the full amount of that. He must pay a sum which shall bear the same proportion to the whole indebtedness that his stock bears to the whole capital, and is not required to pay more. For the purposes of this case it is not necessary to decide what effect the insolvency of any of the stockholders would have upon the liability of such as are solvent. It is certain that no stockholder is liable for more than his proportion of the debts. This proportion can only be ascertained upon an account of the debts and stock and a pro rata distribution of the indebtedness among the several stockholders. The proper action, therefor, to enforce the liability is one in which such an account can be stated and distribution made. Such an action calls specially for the exercise of the powers of a court of equity, which can bring before it all the necessary parties and adjust all their rights. Every stockholder, when called upon to perform his obligations, has the right to require that the extent thereof shall then be determined once for all, as well that which he is under to his associate stockholders as that to the creditors."

In Terry v. Tubman, 92 U. S. 156, 161 (23 L. Ed. 537), the court said:

"The case of Pollard v. Bailey, 20 Wall. 520 [22 L. Ed. 376], is an authority against the maintenance of a separate action by one creditor who seeks to obtain his entire debt to the possible exclusion of others similarly situated. The proper proceeding is in equity where all claims can be presented, all the liabilities of the stockholders ascertained, and a just distribution made."

While the principle of Pollard v. Bailey and Terry v. Tubman and other similar cases palpably has no application to that now before us, they are valuable as illustrating the essential difference between them and this suit considered with reference to any one of the defendants. In Flash v. Conn, 109 U. S. 371, 3 Sup. Ct. 263, 27 L. Ed. 966, the court held that the liability of a stockholder of a New York corporation under a provision in a general incorporation act of that state that "all the stockholders of every company incorporated under this act shall be severally individually liable to the creditors of the company," to the amount of stock held by them respectively, created a legal claim enforceable at law. The court, among other things, said:

"Lastly, it is objected that the declaration sets out a case which should have been prosecuted in equity, and not at law. There is no ground for this objection to rest on. In the cases of Pollard v. Bailey, 20 Wall. 520 [22 L. Ed. 376]; Terry v. Tubman, 92 U. S. 156 [23 L. Ed. 537], to which we are referred in its support, the liability of the stockholders was in proportion to the stock held by them. Each stockholder was, therefor, only liable for his proportion of the debts. This proportion could only be ascertained upon an account of the debts and stock, and a pro rata distribution of the indebtedness among the several stockholders. This, the court held, could only be done by a suit

in equity. But in this case the statute makes every stockholder individually liable for the debts of the company to an amount equal to the amount of his stock. This liability is fixed, and does not depend on the liability of other stockholders. There is no necessity for bringing in other stockholders or creditors."

In Auer v. Lombard, 72 Fed. 209, 19 C. C. A. 72, in the circuit court of appeals of the first circuit, a bill had been brought by some of the creditors of a Colorado bank against a portion of its shareholders to enforce the statutory double liability of the latter. The court had occasion to refer to two acts of Colorado, one passed in 1877 and in 1883 made applicable to the officers and stockholders of savings banks, and the other in 1885. The first provided:

"The officers and stockholders of every banking corporation or association formed under the provisions of this act shall be individually liable for all debts contracted during the term of their being officers or stockholders of such corporation, equally and ratably to the extent of their respective shares of stock in any such corporation or association, except" &c. Gen. St. 1883, § 279.

The second provided:

"Shareholders in banks, savings banks, trust, deposit, and security associations, shall be held individually responsible for debts, contracts and engagements of said associations in double the amount of the par value of the stock owned by them respectively." Laws 1885, p. 264.

The court, among other things, said:

"The earlier of these two statutes required an apportionment among stockholders. In many jurisdictions, if not in all, this would involve a bill in equity with an accounting of all the corporate liabilities and a contribution by the stockholders, and for this the further making the corporation, and perhaps all stockholders, parties. * * * The act of 1885 establishes a liability of an essentially different character from that of 1883, in the fact that it is not ratable, and also of an essentially different amount. The two cannot stand together with reference to the same corporation, and debts of the same period of contracting; and we have no doubt that, so far as this controversy is concerned, the later act wholly supersedes the earlier one, and the complainant's rights rest on it alone. As the liability involves no accounting, the remedy is at law only. Kennedy v. Gibson, 8 Wall. 498, 505 [19 L. Ed. 476]. Casey v. Galli, 94 U. S. 673 [24 L. Ed. 168]. We do not say that there might not be a case under the statute which would involve an accounting, and the securing and distribution of a fund, but only that no such case is shown here."

The assessment was laid for the purpose of paying the debts of the American Alkali Company. It was fixed at the definite sum of $2.50 on each preferred share held by the defendants respectively. There is no suggestion in the bill that the assessment will not be sufficient to pay in full the debts of the corporation and all expenses. Further, the bill neither prays nor involves any accounting or contribution. Each defendant is separately and independently charged with a definite sum for which, if liable, he is liable without reference to any other defendant. The bill does not pray for the ascertainment or marshaling of assets or debts, or for the fixing of priorities, or for the payment of the debts of the corporation, or for a distribution. It was filed simply for the recovery of separate and independent legal pecuniary demands. It is wholly immaterial, so far as ulterior purposes are concerned, whether the receiver shall receive those moneys through the instru-

mentality of a bill in equity, on the one hand, or, on the other, by actions at law. In either event the fund after its collection by the receiver would be applied to the payment of debts under order of court. Should there be any residue after the payment of all debts it would be distributed among the stockholders in proportion to the number of their shares, save in so far as any of them had failed to pay the several amounts assessed against them; and in the event of such failure, whether from insolvency of individual stockholders or from any other cause, the several amounts for which they were respectively in default would, preparatory to a final distribution, be deducted from the amount of the shares of the fund which they otherwise would be entitled to receive. But all these matters belong to subsequent proceedings in one or both of the suits instituted in New Jersey and Pennsylvania in September, 1902, and still pending, and do not pertain to the present bill.

There is no distinction in principle, so far as jurisdiction in equity or at law is concerned, between the enforcement of the total liability of a stockholder for his unpaid subscriptions of stock and the enforcement of an assessment less than his total liability, such as is disclosed in the present case. It is true that in Kennedy v. Gibson, 8 Wall. 498, 19 L. Ed. 476, which was a suit by a receiver of an insolvent national bank, appointed under the national banking act of June 3, 1864, c. 106, 13 Stat. 99, to enforce the personal liability of some of the stockholders, the court said:

"The liability of the stockholders is several and not joint. The limit of their liability is the par of the stock held by each one. Where the whole amount is sought to be recovered the proceeding must be at law. Where less is required the proceeding may be in equity, and in such case an interlocutory decree may be taken for contribution, and the case may stand over for the further action of the court—if such action should subsequently prove to be necessary—until the full amount of the liability is exhausted."

This statement was unnecessary to the determination of the question before the court, as the bill sought to enforce the full statutory liability, and the case was decided on the ground that it did not appear that the comptroller of the currency had taken any action touching the enforcement of the personal liability of the stockholders. Further, the passage must be read in the light of the law and facts there involved, and when so read is inapplicable to the case before this court. The statement that when less than the total liability is sought to be enforced "an interlocutory decree may be taken for contribution" has, for the reasons hereinbefore expressed, no pertinency to the case before us. Again, we are not aware of any case, similar or analogous to this, in which the decision proceeded on the ground that, while the total separate and independent liability of a stockholder, in the absence of special circumstances of an equitable nature, can be enforced only at law, a fixed liability for less than such total can, in the absence of such circumstances, be enforced in equity. We should long hesitate before recognizing the soundness of a contention which, were it to be sustained, would withhold from stockholders when sued for statutory liability or unpaid subscriptions trial by jury at the whim of those laying an assessment. A remarkable spectacle would be presented if,

knowing that an assessment of the total liability would enable stockholders to enjoy the right of trial by jury, those charged with making it were permitted to deprive stockholders of such trial by making an assessment amounting to ninety or ninety-nine per cent. of the total liability, with the intention of subsequently collecting the balance.

In conclusion we have failed to find any well-considered case supporting the contention that under the principles enunciated in Hale v. Allinson the court below properly could, under the circumstances disclosed, and on the bill as filed, assume equitable jurisdiction for the enforcement of the assessment in question. The bill must, therefore, be dismissed as to the appellants, with costs, and it is so ordered.