### BRITTON v. ANDREWS et al.

(Circuit Court of Appeals, Eighth Circuit. September 30, 1925.)

No. 6968.

**1. Corporations ⟨⟩259(7)—Ancillary bill by receiver of insolvent corporation to enforce collection from defendants on unpaid stock subscriptions cannot be maintained.**

Ancillary bill by receiver of insolvent corporation to enforce collection from defendants on their alleged unpaid stock subscriptions cannot be maintained, where receivership suit to which corporation was a party was already pending in same court, since bill, in so far as it sought an account of assets and liabilities and an assessment against stock subscribers, was unnecessary, and, in so far as it sought a personal judgment against each stock subscriber, a plain adequate remedy at law existed.

**2. Corporations ⟨⟩265(5)—Stockholders not necessary formal parties to receivership proceedings for corporation as to unpaid stock subscriptions.**

Stockholders are not necessary formal parties to receivership proceedings for corporation as to unpaid stock subscriptions, since they are represented by corporation itself, which is a party to the suit.

**3. Corporations ⟨⟩259(2)—Receiver may bring actions at law against subscribers for stock after amount due thereon and assets and liabilities of corporation have been determined.**

Where amount of assets and liabilities of insolvent corporation and amount of total unpaid stock subscriptions and proportional amount to be enforced against each stock subscriber has been determined and assessment made, receiver may then bring actions at law against various subscribers for the stock.

Appeal from the District Court of the United States for the Northern District of Iowa; Andrew Miller, Judge.

Ancillary bill by C. W. Britton, as receiver of the Midland Packing Company, against Adam Andrews and others. From a decree of dismissal, plaintiff appeals. Affirmed.

Robert J. Bannister, of Des Moines, Iowa, and C. M. Stilwill, of Sioux City, Iowa (J. M. Parsons, of Des Moines, Iowa, on the brief), for appellant.

E. A. Morling, of· Emmetsburg, Iowa, and A. C. McGill, of Des Moines, Iowa (Healy & Breen, of Ft. Dodge, Iowa, E. A. & W. H. Morling, of Emmetsburg, Iowa, Kindig, McGill, Stewart & Hatfield, of Sioux City, Iowa, Mallory & Leming, of Hampton, Iowa, and Jepson, Struble, Anderson & Sifford, of Sioux City, Iowa, on the brief), for appellees.

Before LEWIS and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

BOOTH, Circuit Judge. This is an appeal from a decree dismissing a bill, called an ancillary bill, brought by the receiver of the Midland Packing Company against a large number of defendants, to enforce collection from them on their alleged unpaid stock subscriptions in said company. A brief outline of the facts leading up to the present bill is as follows:

The Midland Packing Company was organized under the laws of the state of Iowa in 1918 to carry on a general meat-packing business. The original authorized capital stock was $3,500,000. By an amendment to its articles, this was increased to $8,000,000. About $3,000,00 of the stock was purchased and paid for; $5,000,000 more was subscribed for, on which about $2,000,000 was paid, leaving approximately $3,000,000 unpaid on the stock subscriptions. In connection with these subscriptions for stock, cash payments were generally made for part of the purchase price, and promissory notes were given for the balance. These notes to an amount of more than $1,000,000 were negotiated by the Midland Packing Company, either by way of sale or by way of pledge, and to a very large amount they are still outstanding. The company built a packing plant at Sioux City, Iowa, at a cost of over $3,000,000.

In April, 1920, Peter Hegnes, a citizen of South Dakota, brought a suit in equity in the federal court for the Northern District of Iowa against the Midland Packing Company, alleging that he was a stockholder in the company; that the company had by fraud secured promissory notes from

him and from many others for the purchase of stock in the company; that the company was insolvent or in imminent danger of insolvency; that it had no funds on hand for a working capital. He prayed for a rescission of the contract of purchase of the stock, for an injunction against the sale of the promissory notes given by him, for a receiver for the company, and for general relief. A general receiver was appointed · by ·the court, and possession was taken by him of all the assets of the company for the purpose of winding up its affairs as an insolvent corporation. The receivership thus inaugurated still continues, the assets of the company have been largely collected, claims have been filed and allowed, and the affairs of the company generally administered.

In 1922, the receiver, McMillan, commenced a suit in the court of his appointment, called an ancillary suit, against a large number of defendants, divided by the bill into two classes, stockholder defendants and creditor defendants. The bill alleged that the stockholder defendants had each entered into a contract for the purchase of stock in the Midland Packing Company; "that at the time of entering into said contracts each of the said stockholder defendants executed and delivered to the Midland Packing Company his promissory note or notes for the unpaid balance of the stock so subscribed for by him, and that a large part of the notes so executed and received by the said company were indorsed by it, and sold and transferred, in the due course of business, to the creditor defendants, * * * who are now the owners and holders thereof in due course." The bill further alleged that part of the notes were held by the creditor defendants as collateral security for money loaned to the Midland Packing Company; that claims aggregating $2,173,-477 had been filed against the company in the receivership proceedings and had been approved; that the total claims filed amounted approximately to $3,400,270; that the total amount of unpaid notes on the subscriptions to the stock of the company was $3,062,650, of which amount about 50 per cent. was uncollectable; that the plant of the company could not be sold for more than 50 per cent. of its actual appraised value, $2,522,931.

The prayer was "that the amount due and owing from each of the said stockholder defendants, on their several contracts, referred to in this bill of complaint, be ascertained and established by the court, for the several amounts, as shown by Schedule A, or for such amounts as the court shall find to be due from them, and that the judgment and decree of this court be rendered against each of said defendants for the amount so found to be due from them, and that the assets be marshaled and equitably distributed, so as to equalize the loss among the stockholders, and for such further decree in that behalf as shall preserve the rights of all the parties interested therein, * * * and that each and all of the said creditor defendants be required to bring into court and surrender to the receiver each and all of the notes so held by them, or either or any of them, to the end that the notes may be fully accounted for and be surrendered to the stockholder defendants upon payment thereof, or surrendered for cancellation in connection with any judgment or decree that may be entered herein against them, and the plaintiff prays such other and further relief as the court may deem just and equitable in the premises."

It was held by this court (Carey v. McMillan, 289 F. 380) that the bill should be dismissed. The court in its opinion said: "To sum up: The demand made against each defendant being purely legal, each demand being independent of every other, the amount demanded against each being the full amount unpaid on the stock, no accounting being necessary, no contribution being necessary, community of interest of the defendants in all the important questions of law and fact involved not being shown and being highly improbable, we are of opinion that the bare multiplicity of suits is not sufficient to give the court jurisdiction to entertain the present bill in equity. The plain and adequate remedy at law open to the receiver is to bring ancillary actions at law in the federal court against the several defendants whose notes he holds. When the pleadings are made up, if it is found feasible and desirable to consolidate the suits into one or several groups for trial, the power of the court is ample for that purpose. The convenience of the parties can thus be served, the cost of the litigation need not by appreciably greater, and the right of trial by jury will be preserved."

In 1923 a suit in equity was brought in the same court by John A. Reagan, as trustee, against the same defendants (stock subscribers) as in the McMillan bill. Reagan alleged in his bill that he was a judgment creditor, having obtained a judgment in the state court of Iowa upon the indorsement of certain promissory notes by the Midland Packing Company which were made to it

by subscribers to its stock; that execution had been returned unsatisfied; that the company was insolvent; that claims existed against the company, of the same class as plaintiff's claim, amounting to more than $1,750,000; that there were other claims, of a class inferior, amounting to more than $2,000,000; that the receiver had sold the plant and other assets, and had collected sufficient proceeds to pay 15 per cent. to 20 per cent. to creditors of the same class as plaintiff.

The prayer of the bill was "for an accounting to fix and determine the assets and liabilities of the Midland Packing Company and the amount of its unpaid stock subscriptions, and that the court shall fix and determine the percentage of his unpaid stock subscriptions which each defendant stockholder, shall pay, and the amount of the fair and equitable contribution of each defendant herein for the payment of the debts of said corporation, and that by said decree judgment shall be rendered and entered against each defendant for a sufficient amount of his unpaid stock subscriptions to in the aggregate pay the claim of this plaintiff against the Midland Packing Company, and those of all other creditors similarly situated, together with interest and its costs and disbursements in this action, and that it may have decree for such other and further relief as shall seem just and equitable in the premises."

The court below dismissed the bill, on the ground that, since there was a receiver already in possession of the assets of the company and administering the same, the suit by Reagan would be an interference with the possession of the court, and therefore could not be maintained. 298 F. 500. This judgment of dismissal was affirmed by this court in Reagan v. Midland Packing Co., 8 F.(2d) 954, decision filed September 30, 1925.

In 1924 after the dismissal of the Reagan suit in the lower court, the present suit was brought by the receiver against the same defendants (stock subscribers) as in the McMillan and Reagan bills. The bill alleges the history of the company and the issue of its stock as above set forth, the insolvency of the company, the appointment of the receiver, and the administration by him of the assets of the company, the collection of proceeds sufficient to pay 15 per cent. to 20 per cent. to general creditors, whose claims have been allowed, and the existence of the unpaid stock subscriptions. The prayer is substantially the same as in

the Reagan bill above quoted. The present bill was dismissed by the trial court.

It is claimed by the appellees that the decision in Carey v. McMillan (C. C. A.) 289 F. 380, is decisive of the present suit, and that the question of the inability of the receiver to maintain the present suit is res adjudicata. Appellant claims that there are radical differences between the allegations of the bill in the McMillan suit and those in the present bill, and that the decision in the former suit is in no way opposed to the maintenance of the present one.

There are, it is true, numerous differences between the bill in the McMillan suit and the present bill. Some of them consist of different allegations in reference to the same subject-matter; some of them consist in omitting altogether from the present bill allegations found in the McMillan bill. The parties defendant are not strictly the same. In the McMillan suit not only the subscribers to stock were made defendants, but also the holders of notes given by such subscribers to the Midland Packing Company for the purchase of stock, and which notes had been negotiated by the Midland Packing Company, either by a sale outright or by being pledged as collateral to debts of the Midland Packing Company. In the present suit these creditor defendants have been omitted. In the present suit there is an additional defendant, the Midland Packing Company.

In the McMillan suit it was alleged that claims had been filed in the amount of $3,400,270, and that claims had been approved to the amount of $2,173,477. In the present bill, the claims approved are stated to amount to $1,760,000, a difference of $413,000. No explanation is given in the bill of this difference in amount of approved claims. In the McMillan bill it is stated that notes had been given in part payment for the stock subscribed by the defendant stockholders. No such allegation is found in the present bill. The present suit is based, in theory at least, not upon the notes, but upon the stock subscriptions.

In the McMillan bill it was alleged that of the notes outstanding, given by stock subscribers in Iowa, $247,876 were held and owned by the receiver, which left upwards of $1,000,000 either owned or held as collateral by third parties. In the present bill it is stated that the stock subscriptions are in the possession of the receiver, but it is not stated whether any of the notes given in connection with stock subscriptions are in the possession or under the control

of said receiver. In the McMillan bill it is stated that probably less than 50 per cent. of the notes given in connection with stock subscriptions were collectable. In the present bill nothing is said as to the amount of uncollectable notes or uncollectable stock subscriptions.

Nowhere in the present bill is it stated directly that less than the full amount owing on the stock subscriptions will be necessary in order to pay the debts and the administration expenses. It is sought, however, to have the inference drawn from the allegations in reference to the necessity for assessments that the total amount due on the subscriptions will not be necessary. In the McMillan bill, it is stated unequivocally that the full amount due on the notes given in connection with stock subscriptions will be necessary in order to meet the debts and administration expenses.

No explanation is found in the present bill of these vital differences in the statement of facts in the two bills. No reason is given in the present bill for the omission to state important facts which appear in the McMillan bill, and which have a bearing on the propriety of maintaining the present suit. Both the McMillan bill and the present bill are verified. The court below, in determining the motion to dismiss, doubtless considered the allegations of the McMillan bill, so far as they supplemented the allegations of the present bill, and so far as they were relevant to the question of the propriety of maintaining the present suit. Both bills are of record in this court, and we are at liberty to consider them both in passing upon the action of the court below.

When the present bill is considered in the light of the unexplained and unchallenged allegations of fact in the McMillan bill, we think there is much basis for the contention that the question of the maintenance of the present suit is governed by the decision in the McMillan suit. See Sapulpa Petroleum Co. v. McCray (C. C. A.) 4 F.(2d) 645. But it is contended that the allegations of the present bill only should be considered, in determining the propriety of the present suit, and that, when the present bill is considered independently, several important facts show the necessity for the present suit: (1) That the liability on the stock subscriptions, and not on the promissory notes given in connection therewith, is sought to be enforced; (2) that the whole amount of liability is not sought to be enforced, but only such proportional part as the court shall determine is necessary; (3)

that an accounting is necessary to determine the assets and liabilities of the company, the creditors who are entitled to share in the fund to be created by the collection of the unpaid subscriptions, and the percentage necessary to be paid by each subscriber on the unpaid balance on his subscription in order to meet the claims of creditors; and (4) that such an accounting can be had only in a court of equity. We do not think that any or all of these contentions justify the maintenance of the present suit. We do not, however, find it necessary to decide whether the question of such maintenance is res adjudicata by reason of the decision in Carey v. McMillan (C. C. A.) 289 F. 380, nor do we find it necessary to determine whether the liability of the stock subscribers should be determined in suits on the promissory notes given by them or on the stock subscription contracts. The demand in either instance is a legal one, and the character of the demand is not changed by reason of the fact that the liability of the defendants may not have to be enforced to the full extent.

[1, 2] The real question is whether, in view of all the facts, the bringing of the present bill by the receiver is in accordance with proper practice. It may be conceded that findings are necessary as to the amount of assets and of liabilities of the Midland Packing Company, and the amount of total unpaid stock subscriptions, as also a determination of the proportional amount to be enforced against each stock subscriber, and it may be further conceded that such findings ought properly to be made by a court of equity. But a suit in equity is already pending in the same court in which the present bill is brought. The Midland Packing Company is a party to that suit. All of the above steps can be taken in that existing receivership suit on a petition by the receiver. The stockholders are not necessary formal parties to such proceedings. They are represented by the corporation itself, which is a party to the suit. 6 Fletcher Cyc. Corp. § 4120; Hawkins v. Glenn, 131 U. S. 319, 9 S. Ct. 739, 33 L. Ed. 184; Glenn v. Liggett, 135 U. S. 533, 10 S. Ct. 867, 34 L. Ed. 262; Great Western Telegraph Co. v. Purdy, 162 U. S. 329, 16 S. Ct. 810, 40 L. Ed. 986; Bernheimer v. Converse, 206 U. S. 516, 27 S. Ct. 755, 51 L. Ed. 1163; Converse v. Hamilton, 224 U. S. 243, 256, 32 S. Ct. 415, 56 L. Ed. 749, Ann. Cas. 1913D, 1292; Selig v. Hamilton, 234 U. S. 652, 34 S. Ct. 926, 58 L. Ed. 1518, Ann. Cas. 1917A, 104; Hale v. Hardon, 95

F. 747, 37 C. C. A. 240; Spargo v. Converse, 191 F. 823, 112 C. C. A. 337; In re M. Stipp Const. Co., 221 F. 372, 137 C. C. A. 180; Rosoff v. Gilbert Transp. Co. (D. C.) 221 F. 972, 979; Howarth v. Lombard, 175 Mass. 570, 56 N. E. 888, 49 L. R. A. 301.

[3] After the steps above outlined are taken and the assessment is made, the receiver may then bring actions at law against the various subscribers for the stock; and such is the proper course. Tardy's Smith on Receivers, p. 903; 14a C. J., § 3245; Kennedy v. Gibson, 8 Wall. 498, 19 L. Ed. 476; Sanger v. Upton, 91 U. S. 56, 23 L. Ed. 220; Glenn v. Sumner, 132 U. S. 152, 10 S. Ct. 41, 33 L. Ed. 301; Kelley v. Gill, 245 U. S. 116, 38 S. Ct. 38, 62 L. Ed. 185; Fidelity Tr. & Safe Dep. Co. v. Archer, 179 F. 32, 103 C. C. A. 16; Rosoff v. Gilbert Transp. Co., supra; Clinton Mining & Mineral Co. v. Cochran, 247 F. 449, 159 C. C A. 503; Barkalow v. Totten, 53 N. J. Eq. 573, 32 A. 2; Hood v. McNaughton, 54 N. J. Law, 425, 24 A. 497; McDermott v. Woodhouse, 87 N. J. Eq. 615, 101 A. 375; Smith, Recr., v. Johnson, 57 Ohio St. 486, 49 N. E. 693.

In the case of Fidelity Tr. & Safe Dep. Co. v. Archer, supra, the court in its opinion said: "There is no distinction in principle, so far as jurisdiction in equity or at law is concerned, between the enforcement of the total liability of a stockholder for his unpaid subscriptions of stock and the enforcement of an assessment less than his total liability, such as is disclosed in the present case."

The question whether such actions at law by the receiver should be on the stock subscriptions or on the promissory notes given in connection therewith, the question whether the receiver can maintain such actions at law in cases in which he is not in control of both the stock subscription and the accompanying promissory note, and all similar questions, as well as those arising out of the various defenses peculiar to the individual defendants, can all be determined in actions at law, and the right of trial by jury can at the same time be preserved. It is conceded by appellant that actions at law are necessary in jurisdictions other than the one wherein the receiver was appointed. We think the same procedure should obtain in the home jurisdiction.

In so far as the present bill seeks merely to have an accounting of assets and liabilities, and an assessment made against the stock subscribers, it is unnecessary. In so far as it seeks a personal judgment against each stock subscriber, it cannot be maintained, since there is a plain, adequate remedy at law.

Decree affirmed.