In re GREEN.

(District Court, E. D. Pennsylvania. September 10, 1913.)

No. 4,643.

BANKRUPTCY (§ 212*)—PROPERTY FRAUDULENTLY TRANSFERRED—JURISDICTION—POWERS CLAIMED—PLENARY SUIT.

Where, in reply to a petition by a bankrupt's trustee to recover certain assets alleged to have been transferred by the bankrupt with intent to defraud his creditors, it was shown that the assets were out of the bankrupt's possession when the petition was filed, and the transferee testified under oath that he had purchased the property in good faith while the bankrupt was doing business in the ordinary manner, and had paid the bankrupt therefor with money that the transferee had hoarded, he was entitled to have the question determined in a plenary suit, notwithstanding his testimony was incredible.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 236; Dec. Dig. § 212.*]

In Bankruptcy. In the matter of Jacob Green, bankrupt. Proceeding by trustee to recover certain goods alleged to have been transferred by the bankrupt to one J. H. Dahm, with intent to defraud the bankrupt's creditors. Dismissed.

Alfred Aarons and Wessel & Aarons, all of Philadelphia, Pa., for John H. Dahm.

Maurice W. Sloan, of Philadelphia, Pa., for trustee.

THOMPSON, District Judge. The order of the referee which is certified for review was entered July 21, 1913, and was as follows:

"And now, to wit, the 21st day of July, 1913, it appearing that J. H. Dahm has in his possession a lot of goods, the property of the bankrupt, Jacob Green, it is hereby ordered that the said Dahm hand over to the trustee in bankruptcy all of the goods in his possession properly identified to have been

obtained by him from Jacob Green, and that the costs of this proceeding be imposed upon the said J. H. Dahm."

The order was based upon a petition of the trustee averring that the bankrupt, with the assistance of Dahm, had transferred the assets in question to a store at No. 1206 Columbia avenue, in the city of Philadelphia, with intent to cheat and defraud his creditors, upon which the referee entered a rule upon the bankrupt and Dahm to show cause why the bankrupt and Dahm should not deliver the property to the trustee.

On behalf of Dahm a petition was filed moving to dismiss the trustee's petition for want of jurisdiction, averring inter alia that during the months of September, October, and November, 1912 (prior to the filing of the petition in bankruptcy), he (Dahm) purchased certain shoes, rubbers, shoe findings, and window stands from the bankrupt, and that the purchases were made by him in the ordinary course of trade, in good faith, for valuable consideration, without fraud, and while the bankrupt was a merchant in apparently prosperous circumstances, and that he has made payment for said purchases; that since acquiring the chattels located at No. 1206 Columbia avenue by purchase he has had sole, exclusive, open, notorious, and adverse possession thereof, and that they have never been in the possession of the trustee, nor at any time since said purchases have they been in the possession of the bankrupt, Jacob Green; that the chattels are his sole and separate property, and that neither the bankrupt nor any other person has any interest therein whatsoever, but that he has title absolute and adverse against the trustee and against the whole world. Jacob Green, the bankrupt, filed an answer denying the removal and secretion of his goods as set out in the petition, and denying possession of the assets, and averring that it is beyond his power to comply with the order.

Sufficient appears from the testimony taken before the referee to indicate that the goods alleged to have been removed and secreted were out of the possession of the bankrupt at the time of the filing of the petition, and it therefore became material to determine whether Dahm's claim of adverse title was merely colorable, or whether his claim was such as to put the trustee to a plenary action to determine the title to the goods. The learned referee, after careful consideration of the testimony of Dahm and other witnesses, made the order, as stated in his report—

"on the ground that I declined to consider seriously the testimony of Dahm, the claimant, that he had accumulated $4,000 in bank bills, which he kept in a book, of which he did not know the name, and carried the same in his pocket to Philadelphia. I discriminated this case from the case of In re Blum [C. C. A.] 29 Am. Bankr. Rep. 332 [202 Fed. 883], on the ground the claimant in Re Blum alleged credible facts, whereas the facts related in the claim of Dahm are incredible on their face and not worthy of serious consideration, as shown in my report."

Dahm's testimony, which stands uncontradicted, is to the effect that he was desirous of embarking in the shoe business in Philadelphia; that he came to this city and leased the premises 1206 Columbia avenue in the summer of 1912, and that he arranged with Green to purchase

a stock of shoes for him; that he paid about $500 to fit up his store, and paid Green, up to October 3, 1913, $3,440 for the stock of shoes. He stated that before coming to Philadelphia he was working in Potts- ville, earning a salary of $12 per week and making some money in other work, and that in about five years he had saved nearly $4,000, which he kept in a book—the third volume of a set of Dickens' Works, the volume being kept in a shoe box not under lock and key—in an attic room on the third floor of the house in which he lived in Potts- ville; that he brought this money in cash to Philadelphia, and used it in fitting up the store and in paying the $3,440 to Green; that he later, before Green's bankruptcy, gave Green a note for $3,000 to cover the balance. He was not able to state the number of shoes purchased from Green, nor the number of cases in which they were delivered, and his entire testimony was such as to justify an opinion that the story was incredible. The facts set out in the motion to dismiss were, however, under oath, and the examination by the referee was under oath.

While the circumstances stated by Dahm may have appeared so im- probable as to have convinced the referee that they were untrue, yet Dahm swore to them as facts, and, for the purposes of determining whether Dahm's claim is adverse, I think it is beyond the power of the referee or this court to decline to consider these alleged facts, which are not contradicted, notwithstanding the impression of untruthful- ness. Upon the face of the averments in the motion to dismiss and the statements made under oath before the referee, Dahm has set up an adverse claim of title to the property which comes within the rule in Bardes v. Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175, 4 Am. Bankr. Rep. 163, and Louisville Trust Co. v. Comingor, 184 U. S. 19, 22 Sup. Ct. 293, 46 L. Ed. 413, 7 Am. Bankr. Rep. 421, and the question involved can, therefore, only be raised by a plenary suit. It was stated in Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, 7 Am. Bankr. Rep. 224:

"But suppose that respondent had asserted that he had the right to posses- sion by reason of a claim adverse to the bankrupt. The bankrupcty court had the power to ascertain whether any basis for such a claim actually ex- isted at the time of the filing of the petition. The court would have been bound to enter upon that inquiry, and in doing so would have undoubtedly acted within its jurisdiction, while its conclusion might have been that an adverse claim, not merely colorable, but real, even though fraudulent and voidable, existed in fact, and so that it must decline to finally adjudicate on the merits. If it erred in its ruling either way, its action would be subject to review."

In the case of In re Blum the court said:

"The term 'colorable' seems to have crept into the bankruptcy decisions without authority of statute, unless it be construed to mean merely that if a respondent sets up as facts, and not as conclusions of law, matters which, *if true*, would constitute a statement of an adverse claim, then the claim would be adverse, and not colorable, and not within the jurisdiction of the referee. It can hardly have been the purpose of Congress to deprive a liti- gant of the benefit of a plenary hearing in cases involving the determination of *contested questions of fact.*"

As I construe the decisions, the determination of questions of fact is for a jury or a chancellor in a plenary suit, if the uncontradicted

facts asserted .are sufficient, if true, to make out a real adverse claim, no matter how ill-supported it may appear. to be. In re Teschmacher & Mrazay (D. C.) 127 Fed. 728, 11 Am. Bankr. Rep. 547.

Incredible though the facts to sustain the claim of adverse title may appear, I think the claimant is entitled to have them taken as true for the purpose of determining the question of jurisdiction, and it is therefore ordered that the order of the referee be set aside, and the trustee's petition dismissed.