### In re M. STIPP CONST. CO.

### STIPP v. O'MALLEY.

(Circuit Court of Appeals, Third Circuit. March 25, 1915.)

#### No. 1895.

BANKRUPTCY ☞250—COLLECTION OF ASSETS—STOCK SUBSCRIPTIONS—JURISDICTION.

The bankruptcy court had power to make a preliminary inquiry concerning the necessity of assessing such subscriptions to the stock of a bankrupt corporation as might appear to be unpaid, and to authorize the trustee to make the assessment or call upon such unpaid subscriptions, notwithstanding a dispute as to whether anything was unpaid on the subscriptions; this not conclusively determining that the stockholder must pay, and not taking from him his right to prove, when sued on the assessment, that he had already discharged the obligations sued on.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 235, 350; Dec. Dig. ☞250.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Middle District of Pennsylvania; Chas. B. Witmer, Judge.

In the matter of the M. Stipp Construction Company, bankrupt, of which Charles P. O'Malley is trustee. From an order directing the trustee to issue a call on the subscribers to the stock of the bankrupt company, Mathias Stipp appeals. Modified and affirmed.

R. A. Zimmerman and A. A. Vosburg, both of Scranton, Pa., for appellant.

Ralph L. Levy and R. W. Archbald, both of Scranton, Pa., for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. The Construction Company was adjudged a voluntary bankrupt in December, 1910, and in February, 1911, Charles P. O'Malley was chosen trustee. On May 20, 1913, the trustee presented a petition to the District Court setting forth in substance as follows:

The scheduled debts amount to about $81,000, and the scheduled assets to about $1,700. The company was organized in 1906, with an authorized capital stock of $100,000, divided into 1,000 shares, of which 940 shares were subscribed for by seven persons (only six of whom need to be noticed at present). Mathias Stipp was a subscriber for 844 shares, Arthur Stipp for 5 shares, and John J. Marquart for 1 share—Mathias Stipp, however, being the person liable on these three subscriptions, aggregating $85,000. On the books of the company the following credit appears against these 850 shares:

| | |
|---|---:|
| Tools and equipment of Mathias Stipp | $10,000 00 |
| Good will of the said business | 65,000 00 |
| Contract accounts of the said business | 2,659 09 |
| Book accounts of same | 7,340 91 |
| Total | $85,000 00 |

The other three subscribers are Samuel O. Welles, 15 shares, Thomas Palmer, 10 shares, and A. E. Stephens, 50 shares; a credit of $625 appearing against the subscription of Welles, but no credit appearing against the other two. The values given to the foregoing items credited to Stipp were false and fictitious, the property thus valued being worth not more than $2,000 in the aggregate, leaving at least $83,000 unpaid; and a further sum of $6,875 remains unpaid on the subscriptions of Welles, Palmer, and Stephens.

The petition prayed that an account of the assets and liabilities might be taken, in order that the amount due on each subscription might be ascertained, and that an assessment might be levied thereon in order to pay the debts and obligations of the bankrupt. Thereupon the court referred the petition to a special master, directing him to hear the parties and "make such order thereon as may be proper in the premises." The order was ex parte, and after the master had fixed July 15 for the hearing, Mathias Stipp, Arthur Stipp, Welles, and Palmer petitioned on July 14 for a vacation of the order,

setting forth as their reasons that the District Court had no jurisdiction to direct the master to ascertain the amount due from the stockholders and to make an assessment; that such an order could only be made in a court of law or equity, the authority of the bankruptcy court being "limited to the directing of a trustee to collect the amount unpaid on the subscriptions if any be due"; and that the question, how much was due on a subscription, was "a question of fact, which your petitioners have a right to have adjudicated before a court and a jury in a plenary proceeding." They also averred that in December, 1911, the trustee had brought an action of assumpsit against Mathias Stipp in the court of common pleas of Lackawanna county "to collect an alleged amount due on the balance of his subscription on the said stock," and denied that they owed any balance on their subscriptions. On the same day, July 14, the court stayed the proceedings before the master. On July 21 Mathias Stipp, on behalf of himself, Arthur Stipp, Welles, Palmer, and Marquart's administratrix, filed an answer to the trustee's petition of May 20, averring that when the company was organized the directors made—

"* * * a true, correct, and exact inventory of all of the tools and equipment, book accounts, contract accounts, and appraised and estimated the same, together with the good will of the business of Mathias Stipp, which he had been previously conducting and carrying on, being a contracting and construction business, and appraised the same and fixed the value thereof at the sum of $85,000, and took over the said tools, equipment, contract. accounts, book accounts, good will, etc., of Mathias Stipp at the sum or price of $85,000, and credited the same to the subscription of the capital stock of the M. Stipp Construction Company by Mathias Stipp, John J. Marquart, and Arthur P. Stipp, thus paying in full for the stock subscribed for by the said Mathias Stipp, John J. Marquart, and Arthur P. Stipp, and that there is not now and has not at any time since been any unpaid subscription due on said stock."

Stipp's answer made certain averments, also, about the Welles and Palmer stock, and finally denied that false and fictitious values had been given to the tools, etc., declaring:

"* * * That the tools, equipment, good will, fixtures, book accounts. contract accounts, etc., of Mathias Stipp, which were turned over to the M. Stipp Construction Company and credited on the stock subscribed for by Mathias Stipp, John J. Marquart, and Arthur P. Stipp, were of the full value of $85,000, and were so inventoried and appraised by the directors of the M. Stipp Construction Company, and were so taken over by the directors of the M. Stipp Construction Company at the said appraised value. * * * And the directors of the said company having so appraised them, their act is conclusive upon the corporation and creditors thereof."

With the record in this condition the District Court on July 28 modified the previous order, so that the special master, "instead of being directed to make such order on said petition as may be proper in the premises, be directed to recommend such an order as may be proper in the premises upon due hearing of the parties," and dismissed Stipp's petition to vacate. Thereupon the master resumed the hearing, and at the first meeting, on August 21, counsel for Mathias Stipp, Arthur Stipp, Welles, and Palmer withdrew his general appearance and entered an appearance specially "for the purpose of objecting to the finding of any unpaid balance due on the subscriptions to the capital stock of the

M. Stipp Construction Company of Mathias Stipp, Thomas Palmer, Samuel O. Welles, and Arthur Stipp, excepting such amount as may be shown prima facie on the books of the company to be still due and unpaid." Apparently he took no other part in the hearings, but after the master filed his report on March 19, 1914, recommending as follows:

"That the trustee be instructed to give the subscribers to the stock of the M. Stipp Construction Company credit for all cash, tools, and equipments, or contracts, turned in by any of said subscribers for the purchase of the said stock.

"That the trustee be directed to issue a call on the subscribers to the stock of the M. Stipp Construction Company to the following amounts on their subscriptions *which still remain unpaid by the said subscribers:*

Mathias Stipp, on his own behalf and that of Arthur Stipp and
|   |   |   |
|---|---|---|
| J. J. Marquart | $65,500 | 00 |
| A. E. Stephens | 5,000 | 00 |
| S. O. Welles | 875 | 00 |
| Thomas Palmer | 1,000 | 00 |
| George R. Anderson | 1,500 | 00 |
|   | $73,875 | 09" |

—he filed the following exceptions to the report:

"(1) The referee erred in assuming the jurisdiction in this proceeding and on this hearing to adjudicate upon the question as to whether or not Mathias Stipp and others had paid in full for their capital stock of the corporation known as the Mathias Stipp Construction Company, and in undertaking to find the balance due on said subscription, and holding that the same shall be considered an asset of the corporation.

"(2) The referee erred in holding that the bankruptcy court has jurisdiction and power to collect for unpaid subscriptions upon the capital stock of the Mathias Stipp Construction Company, and to enforce the payment of the same.

"(3) The referee erred in holding that the trustee in bankruptcy should scan all possible assets with the greatest care, and if he finds anything upon the books of the company which would lead him to believe that a balance is still owing from the purchasers, it is his duty to inquire into the same and take steps to collect the same.

"(4) The referee erred in holding that the good will which went with the sale of the established business of Mathias Stipp, which was sold to the Mathias Stipp Construction Company and formed part of the consideration of the stock issued by said company to Mathias Stipp, was a tangible and valuable asset of the company, and not such an asset as could be legally used in the payment of said stock.

"(5) The referee erred in holding as follows: 'I would therefore feel that, irrespective of the value of the good will at the time of the purchase of the stock, the fact that Mathias Stipp became such a large stockholder in the Mathias Stipp Construction Company, and was such a moving factor in its organization, is sufficient reason for the deduction that his interest and that of the corporation were one.'

"(6) The referee erred in his second recommendation to the court, that the trustee be directed to issue a call of the subscriptions to the stock of the Mathias Stipp Construction Company, for the respective amounts named in said second recommendation.

"(7) The referee erred in recommending that summary proceedings be directed by the trustee to collect the alleged unpaid subscription to the capital stock of the Mathias Stipp Construction Company; the only remedy under the law for the collection of any such unpaid subscriptions being an action at law or in equity brought by said trustee against the parties for the respective amounts alleged to have been unpaid on the respective subscriptions."

The exceptions were argued, and on May 4, 1914, the court made the order recommended by the master, modifying it by striking out the words· we have italicized, and it is this order from which Mathias Stipp has taken the present appeal.

We think the correctness of the action taken by the learned judge is apparent from the foregoing statement of the proceedings. It need not be argued that the District Court had the power to make a preliminary inquiry concerning the need to assess such subscriptions as might appear to be still unpaid, and might authorize the trustee to make the assessment, or call, upon such unpaid subscriptions to the necessary amount. Telegraph Co. v. Purdy, 162 U. S. 336, 16 Sup. Ct. 810, 40 L. Ed. 986. It is clear that in the ordinary case such a proceeding should be taken before the trustee can maintain a suit, but a mere order to assess does not conclusively determine that the stockholder must pay in any event. It does not take away his right to prove that he has already discharged the obligation sued upon, although it does prevent him from attacking the need for an assessment or the amount assessed. Whether he has done anything that prevents him from setting up a defense to which he would otherwise be entitled is a matter to be decided ordinarily by the tribunal that tries the suit against him on the assessment, and we were given to understand on the argument of this appeal that the trustee expects to raise that question in due season. The District Court did not decide it, and as it is not before us we do not decide it either; but we think it proper to do what we can to prevent a controversy concerning the scope and effect of the order in the court below. We shall therefore follow the course pursued in Re Newfoundland Syndicate, 201 ·Fed. 917, 120 C. C.·A. 255, and add these paragraphs to the order of May 4:

"This order shall be without prejudice to the right of any person whose stock is hereby assessed, and who may be sued on such assessment in any court of competent jurisdiction, to make such defense thereto as may affect his individual liability thereon; but such defense shall not attack the administrative action of the District Court and of the trustee in determining the need for an assessment, or in making the same.

"This order does not decide the question whether any stockholder has lost his right to deny his liability on the assessment authorized hereby."

Thus modified, the order appealed from is affirmed.