In re FLANIGAN.

(District Court, E. D. Pennsylvania. December 15, 1915.)

No. 5404.

1. BANKRUPTCY ⚫288—COLLECTION OF ASSETS—SUMMARY JURISDICTION.

In a bankruptcy proceeding, the trustee applied for a summary order requiring the bankrupt's wife to surrender to him an insurance policy, naming her as beneficiary, but reserving to the bankrupt the right to change the beneficiary. The wife claimed to own the policy by assignment from the husband in consideration of the payment of premiums. Pending the proceeding the bankrupt died, the policy was paid, and a sum equal to its cash surrender value was deposited to await the outcome of the controversy. *Held*, that the exercise of summary jurisdiction over the wife could not be justified on the theory that she never had possession of the money representing the cash surrender value, as it was the policy, and not such money, the surrender of which was originally sought, and, moreover, there was no money representing the cash surrender value, as the policy was never surrendered, and the only money was the face of the policy, which was payable to the beneficiary.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 447; Dec. Dig. ⚫288.]

2. BANKRUPTCY ⚫143—PROPERTY PASSING TO TRUSTEE—INSURANCE POLICIES.

Under the law of Pennsylvania (Act April 15, 1868 [P. L. 103, § 1]), providing that insurance taken out on the life of a husband for the benefit of, or bona fide assigned to, his wife or other dependent relative, is immune from the attack of creditors, such a contract of insurance does not pass to the husband's trustee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 194, 201, 202, 213–217, 223, 224; Dec. Dig. ⚫143.]

3. BANKRUPTCY ⚫143—PROPERTY PASSING TO TRUSTEE—INSURANCE POLICIES.

If an insurance policy authorizes insured to change the beneficiary at will, the ancillary or collateral contract giving him the right to surrender the policy and receive the surrender value passes to his trustee in bankruptcy, unless there has been a bona fide assignment of the whole policy, including the right to the cash surrender value.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 194, 201, 202, 213–217, 223, 224; Dec. Dig. ⚫143.]

4. BANKRUPTCY ⚫288—COLLECTION OF ASSETS—SUMMARY JURISDICTION.

Where third persons interfere with property in the hands of the bankruptcy court because in the actual custody and possession of the trustee, or where the bankrupt has possession of property which he is unjustly withholding, the court will issue summary orders.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 447; Dec. Dig. ⚫288.]

5. BANKRUPTCY ⚫288—COLLECTION OF ASSETS—SUMMARY JURISDICTION.

Where a third person under a claim of ownership is in possession of property claimed to belong to a bankrupt, the bankrupt's right thereto must be established in a plenary action, though the claim of right must be a real one, and not a mere pretense, especially in view of Bankr. Act July 1, 1898, c. 541, § 23, 30 Stat. 552 (Comp. St. 1913, § 9607), giving Circuit Courts jurisdiction of controversies at law and in equity, as distinguished from proceedings in bankruptcy between trustees as such and adverse claimants concerning the property acquired or claimed by the

trustees, in the same manner and to the same extent as though bankruptcy proceedings had not been instituted, and such controversies had been between the bankrupts and such adverse claimants.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 447; Dec. Dig. ☞288.]

6. BANKRUPTCY ☞302—COLLECTION OF ASSETS—SUMMARY JURISDICTION.
Where the summary process of a bankruptcy court is invoked against a third person, and jurisdiction is made to appear by an averment of want of title in such third person, or that the title asserted is merely colorable, and the third person sets up title, the averments as to his want of title, or that the title asserted is merely colorable, must be made good by the proofs.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 456, 457; Dec. Dig. ☞302.]

7. BANKRUPTCY ☞293—COLLECTION OF ASSETS—SUMMARY JURISDICTION.
Where, in a summary proceeding to compel the wife of a bankrupt to turn over to the trustee a policy naming her as beneficiary, which she claimed had been assigned to her in consideration of the payment of premiums, she did not consent to the exercise of summary jurisdiction over her, but persistently challenged such jurisdiction, the proceeding must be dismissed, as she had a right to insist upon her claim of title being passed upon in a plenary action, if she so desired.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 411, 417; Dec. Dig. ☞293.]

In Bankruptcy. In the matter of Joseph J. Flanigan, bankrupt. On petition for review of order of referee. Order reversed and vacated, and petition dismissed.

E. Spencer Miller, of Philadelphia, Pa., for claimant.

G. A. Swayze and James J. O'Brien, both of Philadelphia, Pa., for trustee.

DICKINSON, District Judge. In the view we have taken of this case a short outline statement will put us in possession of all the facts necessary to an understanding of the controlling questions involved. We will give in the order named the facts admitted; those in controversy and those of the latter found by the referee.

Joseph J. Flanigan on May 5, 1902, took out a policy of insurance for $10,000 on his life in the Equitable Life Assurance Society. It was made payable to his wife, Margaret Flanigan, in case she survived him, and otherwise to his estate. On February 5, 1915, a petition in bankruptcy was filed, followed in due course by an adjudication and the election of a trustee. The bankrupt disclosed the existence of the policy by filling in the usual forms provided for the purpose accompanying his schedules. The policy was then in force, the premiums having been paid to May 5, 1915. It had an agreed surrender value of $2,500. The policy itself was not in the possession of the bankrupt, but of his wife. The trustee demanded it of her, that he might surrender it, in order to receive its surrender value from the insurance company or from the bankrupt. The wife refused to give it up, claiming it to be her property. The trustee thereupon filed his petition, setting forth the facts, and praying for a sum-

mary order on the wife "to turn over the policy" to him. An order in the nature of a rule to show cause was allowed. The wife answered, challenging the jurisdiction of the referee in summary proceedings, and setting up that her title to the property was derived by contract entered into in 1902, when the policy was transferred and delivered to her in consideration of payments of the premiums. She further averred that such payments had been made by her, and the policy had since been in her possession as her property. A hearing was had upon petition, answer, and proofs. No witnesses were called or evidence offered by the wife, she standing upon her right to establish her ownership in the policy through a plenary action. The trustee, however, called the wife as under cross-examination. She testified in support of the claim made by her. The husband was also called by the trustee. No witnesses were called to contradict either, except that it was argued the testimony of the husband did not wholly support that of the wife. Pending the proceedings the husband died, and by arrangement the company paid the policy and the sum of $2,500 was deposited in bank in the joint names of the trustee and of Mrs. Flanigan to await the outcome of the controversy. The referee found the fact of the payment of the premiums against the wife, and that she had no other claim to the insurance than as the beneficiary of the policy. He further found that, as under the terms of the policy the husband had power to change the beneficiary at will, the trustee was entitled to the $2,500 deposited. He thereupon entered an order directing the moneys on deposit to be paid to the trustee. The referee, except by the making of the order, did not pass upon the question of jurisdiction. There was no finding or suggestion that the claim of the wife was merely colorable.

The petition for review assigns for error: (1) The entertaining summary jurisdiction by the referee; (2) his conclusion that the title of the wife must rest upon a contract, which is itself based upon a consideration; (3) his finding that the premium moneys paid were not the moneys of the wife; and (4) his finding that the testimony of the wife was not credible.

## Discussion.

[1] Unless this case is the proper subject of summary proceedings, it is unnecessary and (if its merits are to be determined elsewhere) unprofitable for us to discuss any of the grounds for review other than the first. In the absence of any discussion by the referee, we must turn to the brief of counsel for the trustee to learn upon what the exercise of summary jurisdiction is based. It admits that the title to property in the possession of a third party under a claim adverse to that of the bankrupt estate cannot be asserted in summary proceedings. The assertion is made, however, that Mrs. Flanigan is not such claimant, because, although she had the policy (title to which she claimed), she did not have in her possession (what is now in dispute) the $2,500 representing the cash surrender value of the policy, the constructive possession of which was in the husband. The distinction made overlooks the fact that the order asked for originally

was "to turn over the policy," and that by agreement the policy was surrendered to the insurance company and the $2,500 substituted in its place. Moreover, the argument based upon any such distinction would lead to the conclusion that the wife is entitled to the whole $10,000. In point of fact there is no money representing the "cash surrender value," because the policy was never surrendered. The only money is the $10,000 insurance money, and all of that, by the express terms of the policy, was payable to the beneficiary. The argument of the trustee, moreover, overlooks the difference between the thing to which a party may be entitled and what through this may further be secured. A policy of insurance, it is true, is merely "the written evidence of a contract." So also is a bond. The owner of the contract may, however, in each instance, secure whatever is due under it. Indeed, this is the basis of the whole claim of the trustee. It is only incidentally or through the act of Congress that he becomes entitled to the "cash surrender value" at all. Indeed, strictly speaking, under the Bankruptcy Law he gives up all claim to the policy, and, in consequence, to the receipt of the cash surrender value from the insurance company, upon being given an equivalent sum by the bankrupt.

A view of the actual situation makes this clear. Congress had in direct contemplation a policy of insurance payable to the bankrupt or his estate. The right of the bankrupt in the contract would be a chose in action, and the title to this as property would pass, along with the other property of the bankrupt, to and vest in the trustee. It would not ordinarily be practicable for the trustee to continue the premiums, and in consequence he would surrender the policy and receive the cash surrender value. The bankrupt might be of such an age or in such a state of health that the cancellation of the policy would be a loss to him, without any further benefit to the bankrupt estate than the cash surrender value. The Bankruptcy Act gives the bankrupt the privilege of paying within a limited time the cash surrender value to the trustee. If the money is paid, the title to the policy reverts to the bankrupt, clear of the claims of all creditors who prove their debts. It is evident that in the one case the trustee collects from the insurance company the cash surrender value through and by his ownership and control of the policy. In the other case he obtains, not the surrender value, but an equivalent sum, through the same means, by giving up the ownership and control of the policy to the bankrupt. If the bankrupt declined to pay the trustee, and the trustee kept the policy alive, instead of surrendering it, the insurance moneys, when they became payable, would be payable to the trustee. If the trustee did not have the ownership and control of the policy, but it had been bona fide and for value assigned, and belonged to some one else having an insurable interest, the trustee could neither surrender it to the insurance company nor sell it to the bankrupt, and in consequence could get nothing. The fact (as is the case here) that the policy names the wife as beneficiary does not in principle alter the rights of the trustee. What passes to him by operation of the bank-

rupt law is all the property of the bankrupt which, broadly speaking, is subject to the claims of creditors.

[2, 3] The laws of Pennsylvania provide that insurance taken out on the life of the husband, for the benefit of or bona fide assigned to his wife or other dependent relative, is immune from the attack of credi-tors. Such a contract of insurance, therefore, does not pass to the trustee. A policy of insurance, however, does not evidence a simple contract of insurance, but in addition to this a number of ancillary or collateral contracts, one of which is to pay the surrender value. The naming of a beneficiary is nothing more than a direction to the insur-ance company to pay the insurance moneys when they become payable to such beneficiary. If the insured may change the beneficiary at will, he still owns the other contract, which gives him the right to cancel the policy and receive the surrender value. This right passes to his trus-tee in bankruptcy and may be exercised by the trustee. Hence the ruling (followed by the referee in this case) that where there is nothing more than the naming of the wife as beneficiary, and this is revocable by the husband, there the trustee may surrender the policy and receive the surrender value, and he does not lose this right unless paid an equivalent sum. If, however, there had been a bona fide assignment to the wife of the whole policy, including the right to the cash surren-der value as well as the insurance moneys; and a fortiori, if the as-signment had been for value, or before any debts were contracted by the husband, so that the policy was the property of the wife, the trus-tee could not surrender the policy or successfully claim its surrender value. This is in effect just what the wife in the present case claims. Of course, if her claim is not a valid one; if, for instance, her claim of title was based upon the payment of a consideration which had not in fact been paid (as the referee has found in this case), and there had been in fact no transfer to her of the policy by the bankrupt, then the trustee could assert the right which would be found to be in him. This brings us, however, to the question of whether her claim of right can be thus determined in summary proceedings.

[4-6] A few general observations may clear the view of this ques-tion for us. A trustee in bankruptcy is a double representative. He is the hand of the court in its dealings with those concerned with the administration of the bankrupt estate. He is also the successor of the bankrupt to all rights which accrued before the bankruptcy. The bankrupt himself, and all the property and effects which come into the possession of the trustee, and all persons who come into the bank-ruptcy proceedings, are subject to the jurisdiction of the court. Third persons, however, are not so subject. This gives us the guide to when summary process may be invoked and when resort must be had to plenary actions. If any one assumes to interfere with property which has passed into the hands of the court, because in the actual custody and possession of the trustee, or if the bankrupt has possession of property which he is unjustly withholding from his trustee, there the court will issue its summary orders. If, however, a third person is in possession of property under a claim of ownership, to which the bank-

rupt also makes claim, there the right of the bankrupt must be established in a plenary action. The claim of right must, of course, be a real one, and not a mere pretense. Hence we have the doctrine of colorable titles, or claims of right which are merely colorable. The provisions of the Bankrupt Law follow the line of these general principles. They are set forth in section 23, with the exceptions noted. When, therefore, summary process is invoked against a third person, and jurisdiction is made to appear by the petition, it is disclosed by an averment of want of title in the possessor, or that any title asserted is merely colorable. If title is set up by such third person, these aver-ments must be made good by proofs. This probably explains the effort made by the trustee to disprove title in the claimant by proof of a negative. It is worthy of being noted that the petition itself in this case admits the claim of title by the wife, without any suggestion of its being merely colorable. The facts were passed upon by the referee and are argued before us precisely as they would be in a plenary action. It would therefore at least seem that the case is not one of summary jurisdiction. The conclusion to which we are led by these general principles is supported by all the cases among which we need only refer to Harris v. Bank, 216 U. S. 382, 30 Sup. Ct. 296, 54 L. Ed. 528; In re Green (D. C.) 207 Fed. 693; In re Blum, 202 Fed. 883, 121 C. C. A. 241.

[7] The silence of the referee upon the subject of jurisdiction sends us upon the search for possible reasons for upholding it. There is some support in the cases for the application of the affidavit of defense rule, and to entertain jurisdiction when the facts advanced as proofs of title set up would not support the claim if admitted to be true. There is possible room in one aspect of the wife's claim for the application of this doctrine if it be accepted as applicable. The referee, however, has clearly not taken this view, because he plants his ruling upon a refusal to find the facts which, under the authority of King v. Supreme Council, 216 Pa. 553, 65 Atl. 1108, he seems to concede would support title in the wife. Consent would, of course, confer jurisdiction; but we clearly are not justified in finding such consent. The wife has consistently stood upon the assertion of what she deems her rights. She refused to surrender the policy because she claimed to own it. By her answer, as already stated, she challenged the jurisdiction. She refused to submit her proofs to the referee, and offered none, although giving testimony when called by the trustee as a wit-ness. She reasserted her denial of jurisdiction when assigning errors in the rulings of the referee and in her petition for review. When the case was called for argument, the attention of her counsel was directed to her right to have the merits of her claim passed upon; but she still stood upon her right to refuse. This right must be accorded her without stint, and not grudgingly, but because it is her right. If she prefers to have her rights determined in other proceedings or in another forum, we see no escape from the conclusion that she is within her rights in refusing to submit herself to summary process.

This conclusion leads to the direction that the order of the referee

be reversed and vacated, and the petition upon which it is founded dismissed; and it is accordingly so ordered, with leave to the trustee to assert his claim of title to the policy or the money on deposit in any appropriate form of action.