### In re LOUIS J. BERGDOLL MOTOR CO.

(District Court, E. D. Pennsylvania. July 1, 1919.)

#### No. 4742.

BANKRUPTCY ⬡250(1)—CORPORATIONS—ASSESSMENT OF STOCKHOLDERS—UNPAID STOCK SUBSCRIPTIONS.

A subscriber for practically all the stock issued by a bankrupt Pennsylvania corporation under a statute requiring payment of the subscription in money *held* not to have discharged his liability by turning over to bankrupt the assets of a New Jersey corporation, which he also owned, which were worth less than half the amount of the subscription, and to be liable to assessment for the difference.

In Bankruptcy. In the matter of the Louis J. Bergdoll Motor Company, bankrupt. On petition by Louis J. Bergdoll for review of order of referee. Confirmed.

See, also, 230 Fed. 248.

Harry E. Keller, of Philadelphia, Pa., for petitioner.
Joseph W. Catharine, of Philadelphia, Pa., for trustee.

DICKINSON, District Judge. Since the filing of the opinion in this case under date of March 15, 1919, the submission of the brief then invited to be submitted has just now come to hand. As before observed, a preliminary difficulty seems to be presented in determining just what questions are sought to be presented by this petition for review, beyond the procedure questions, of which we have already disposed. In the effort to secure a concord of views as to what the substantial questions raised are, they were listed in the opinion already filed, and these at least do appear to be in the cause.

In the brief submitted, counsel for the petitioner has raised and discussed additional questions, which we deem to have been disposed of and to be now out of the way. The first of the suggested

---

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

questions, that of the order of assessment made by the referee, being purely administrative, we understand to be also out of the way by the concessions of counsel made in view of Stipp v. O'Malley, 221 Fed. 372, 137 C. C. A. 180.

The second question, of whether a stockholder is subject to the summary jurisdiction of the referee, is of no practical importance, because it is submerged in the third suggested question, of whether he submitted himself to such jurisdiction. The finding of the referee is that he did, and this finding is approved, and we concur in the views of the referee with respect to this question.

This brings us to the one real question in the cause, which is the propriety of the assessment in respect to the liability of the stockholders upon whom the order was made. The general question embraces the propriety of the assessment in respect to its necessity and extent. These features of the question have been disposed of by the referee, and the disposition made of them has the approval of the court.

An inquiry into the real and only subject of investigation presented by this record begins with the proposition that subscribers to the capital stock of a corporation assume, as a general proposition, only the obligation to pay into the treasury of the corporation the amounts of their respective subscriptions to its capital stock. This means the general proposition that stockholders are not liable for the debts of the corporation. When such liability exists, it is exceptional, and created by statute or otherwise. In determining questions of this kind, the formation and organization of corporations is frequently so carelessly done that questions of liability of stockholders, which should be simple and easy of answer, often become complex and difficult. Corporations are purely creatures of the law, and the law of their creation and of their continued existence and regulation is whatever the statutes may decree it to be.

The general scheme of the creation of corporations for profit under the statutes of Pennsylvania is that the amount of the capital of a proposed corporation shall be stated, and the subscriptions of stockholders thereto shall be set forth with identifying precision. The number of the subscribers thus set forth in the application for the charter may be enlarged by the entry among them of other stockholders, who enter into a contract with the corporation, or with the corporation and each other, to pay into the treasury of the corporation contributions toward its capital. The obligation which this contract of subscription imposes is (unless payment is otherwise authorized) to pay the amount subscribed in lawful money whenever called upon by the board of directors so to do. This function of the board of directors may be exercised by lawful authority, if such payment is required to discharge the debts of the corporation. Under a further provision of the corporation law of Pennsylvania a part of the contributions to its capital may be authorized to be made in property other than money. If no such authorization is made, a stockholder can discharge himself of liability only by making payment in money. It is too obvious to call even for its statement that he cannot rid

himself of liability, or meet his obligation of payment, by a pretended and sham contribution to the stock of the company.

In the present case, it seems that a corporation was formed under the laws of New Jersey on February 1, 1910, to bear the name of the Louis J. Bergdoll Motor Company. It had an authorized capital of $500,000, divided into 5,000 shares, of the par value of $100 each. Louis J. Bergdoll subscribed for 18 shares, and F. R. Hansell and John McPeak each 1 share. Between the date of its organization and March 12, 1910, Bergdoll contributed in actual money $300,000 to the capital stock of this corporation. No certificates of stock, however, appear to have been actually issued, except certificates for the 20 shares above mentioned. This corporation had a brief career, and on March 12, 1912, the bankrupt corporation was chartered under the laws of Pennsylvania. We have not been furnished with a copy of the application for the charter of this corporation, but we understand and assume that it was incorporated for the purposes which its name implies, and that certificates for its stock were to be issued only for money paid into its treasury. The amount of its capital and the number and value of its shares is the same as that of the New Jersey corporation. Of the capital Louis J. Bergdoll subscribed for 2,998 shares, and E. Lawrence Webster and Frank J. Fanning 1 share each. This subscription visited upon Louis J. Bergdoll the obligation to pay $299,800 into the treasury of the corporation whenever duly called upon so to do. It is averred on behalf of the petitioner for review that the purpose and intent of himself and his associates in applying for this charter was to have a Pennsylvania corporation in place of the New Jersey one, and that the charter of the second company was taken out for the purpose of taking over all the assets and business of the first corporation.

On May 31, 1912, the financial condition of the New Jersey corporation was such that the net value of all its assets and property and other possessions did not exceed the sum of $144,428.03. On that date, the New Jersey corporation transferred to the Pennsylvania corporation all of its possessions and property, the latter company assuming all the debts and liabilities of the former, and thereafter the business was conducted by the latter company. Certificates for 3,000 shares of the stock of the Pennsylvania company were issued to the same persons above mentioned, who had subscribed for that number of shares of stock. It is an admitted fact that no consideration for the issue of these shares was received by the Pennsylvania corporation, other than the above-mentioned assets of the New Jersey corporation. How the 10 per cent. requirement of the Pennsylvania statute was met does not appear.

The act of bankruptcy was the payment of moneys to an officer of the corporation at a time when it was admittedly insolvent. The adjudication was on April 11, 1913. The total sum of the proved claims against the bankrupt estate is $302,068.44. This was inclusive of the claim filed on behalf of the present petitioner of $52,500, of which there was a conditional allowance, and includes also a preferred claim of $10,187.32. Something less than $50,000 has been

distributed to general creditors, leaving still due them, exclusive of the Bergdoll claim of indebtedness, $193,730.63. The entire assets of the bankrupt estate, aside from the stock assessment, have a value of $2,806.29. The finding is made, and the fact does not seem to be in dispute, that the company has been insolvent since December, 1912.

The fact situation thus presented is that the Pennsylvania corporation, when incorporated, had a capital represented by $300,000 of the stock subscriptions above mentioned, and $200,000 of unsubscribed stock, commonly called treasury stock. Louis J. Bergdoll and his associate subscribers owned 3,000 shares of the stock of the New Jersey company, being all the stock which had been issued by that company. The net value of everything which the company, whose stock they thus owned, possessed, has been found to have been something less than the sum of $145,000. For this they received certificates for 3,000 shares, of the par value of $300,000, from the Pennsylvania corporation.

We have not been able to discover from this record any fact finding, or anything other than presumptions, upon which a fact finding could be made, of whether the 2,000 shares, which we have called treasury stock, formed part of the 3,000 shares issued or not. This might be of some importance, because, if it were the fact that the treasury stock was issued in part purchase of the New Jersey corporation, then it would be clear that there were 2,000 shares which had been subscribed by Bergdoll and his associates still remaining to be issued. The real fact doubtless is that the stock which was issued was issued without regard to whether it was subscribed stock or treasury stock. There is further no specific fact finding, and nothing definite which we have been able to discover from which the finding could be made, of whether the taking over the property of the New Jersey corporation and the issuing of the 3,000 shares of the Pennsylvania company therefor took the form of an issue of the stock for the property received, or took the form of a money transaction.

This feature of the case also may be of some importance, not as decisive of the question of Louis J. Bergdoll's liability, but as making clear the grounds either of his liability or nonliability, because, as there was no authority in the corporation to issue stock for property, stock subscriptions could only be discharged by making payment. The situation of Louis J. Bergdoll would, under the above fact conditions, seem to be this:

He had agreed to pay the Pennsylvania corporation $299,800. Admittedly he has paid no part of this. His liability to make payment when properly called upon would seem to follow. If he attempted to escape responsibility by the statement that the assets of the New Jersey corporation had been transferred and received by the Pennsylvania corporation, this answer to the call for payment could be met first by setting up the technical absence of authority in the Pennsylvania corporation to accept property in payment of a stock subscription; second, by the absence of any proofs, or even evidence, that the corporation had accepted this property in payment of the stock subscription; and, third, the finding of the referee of what seems to

be the admitted fact, that the property received by the corporation had a fair value of no more than $145,000, and that its valuation of $300,000 was fraudulent as against creditors who would be affected by the excess in valuation. As a consequence, no matter what view is taken of this transaction, it would seem that there was a liability on the part of Bergdoll to pay $300,000 upon one basis, $200,000 upon another, or $155,000 upon another, and, as the order made by the referee upon him does not exceed the minimum, the order should be approved.

Over and above and beyond any purely legal view which can be taken of the whole situation as presented, and looking at it through the eyes of common sense, seeking to get a true view of it, it resolves itself into this: Bergdoll had contributed $300,000 to the capital of the New Jersey corporation. The real value of what he had in this corporation had shrunk to something less than $145,000. He was instrumental in having formed the bankrupt corporation. He turned over all he had in the New Jersey corporation to the Pennsylvania corporation. As against creditors he dealt with the corporation upon the faith of his agreed contribution to its capital stock. If what he thus turned in had an actual value not exceeding $145,000, the fact that he had contributed $300,000 to the capital of the New Jersey corporation would not affect the rights of creditors. He could not throw upon their shoulders a loss which properly should be borne by him.

The learned counsel for the petitioner for review presents as obstacles in the way of reaching the conclusions above indicated the proposition, first, that there had been a domestication, as it is called, of the New Jersey company. Just what is meant by this, or how it affects the legal rights of creditors, or the legal obligations of Bergdoll, is not clear, beyond its being merely the statement of the fact that the Pennsylvania corporation succeeded to the business of the New Jersey corporation, receiving its assets and assuming its debts.

We are unable to accept the statement of counsel that the present creditors of the bankrupt company are unaffected by what was done, if Bergdoll is permitted to take the same status in the Pennsylvania company which he had before held in the New Jersey corporation. In the New Jersey corporation (as we understand the fact to be, although of this there is no finding and no evidence, and the real fact may be otherwise) Bergdoll had the status of a stockholder who had subscribed for and actually fully paid for all the stock for which he had subscribed. In the Pennsylvania corporation his status was that of a subscriber to stock who had thereby assumed a liability to the creditors of the Pennsylvania corporation which he could only discharge by the payment of real money. To permit him to substitute for this obligation an entirely different one, by giving him the right to discharge this obligation by turning over to the creditors in payment of it his depleted holdings in the New Jersey corporation, clearly does affect creditors vitally and very practically.

There is, in making this answer to the claim of creditors, the frank admission by counsel that the provisions of the acts of assembly,

by compliance with which a subscribing stockholder can alone meet his obligation of payment, had not been complied with, and the argument presented to us that, if they had been complied with, the creditors would be in no better position than they are to-day, is short in convincing power, and is answered by the simple statement of two admitted facts. One is that the stockholder did not in fact meet his obligation of payment, and the other is that it is not true that the creditors have not suffered thereby. The other fact, that Bergdoll had in good faith intended and purposed nothing more than to exchange one corporation for the other, is also of little help in the disposal of the case. Whatever Bergdoll's intentions were, and whatever his motive and purpose in doing what he did, if he assumed an obligation to contribute $300,000 (as he undoubtedly did) to the capital of the corporation, he must discharge that obligation as the law requires. He cannot escape liability by stating that he in good faith did not intend to assume liability, nor that he did not anticipate that any one would be the loser by what he did.

The criticisms directed to the findings of the referee upon the subject of the value of the assets of the New Jersey corporation fall short of the accomplishment of their purpose. In the first place, they are the findings of that tribunal to which the finding of facts is committed, and the findings were further made upon the admission of Bergdoll himself, or its clear equivalent, and the obligation of Bergdoll to pay having been made to appear, the burden was not upon the creditors to show that he had not paid, but the burden was upon him to show that he had paid.

There is certainly in this record nothing from which any one would be justified in finding that, if the assets of the New Jersey corporation are accepted in discharge of Bergdoll's subscription contract, the value exceeded the value which the referee has found it to have been. We say the finding was made upon the admission of Bergdoll himself, because the entries in the books of the corporation were accepted at their face value, and the New Jersey corporation, as also the Pennsylvania corporation, was Bergdoll's corporation, bore his individual name, and was nothing else than Bergdoll incorporated as a motor company.

Nor are the findings of the referee affected by what is discussed under the heading of res adjudicata. Bergdoll presented a claim against the bankrupt estate for $395,860 for moneys which he had advanced to the New Jersey company. The answer made to the claim was that $300,000 of what he had advanced was his contribution to the capital stock, and that the balance of the claim was for payments out of which an obligation of debt did not arise, for reasons then set forth.

The finding of the referee was that $300,000 of the moneys advanced was a contribution to the capital stock of the New Jersey company. He further found that the assets of the New Jersey company had been transferred to the Pennsylvania company as before stated, and that the Pennsylvania company had assumed the debts of the New Jersey company. Among these was a debt of $10,000, pay-

able to Bergdoll. This claim was allowed by the referee. There is the further finding that the Pennsylvania corporation issued to Bergdoll certificates for full-paid stock to the amount of $300,000.

We are unable to say that these findings in any way affect the present question, except to the extent that there is a finding of the two facts, one that Bergdoll owned $300,000 stock of the New Jersey company, and the other that there had been issued to him certificates for $300,000 of the Pennsylvania company. The question of whether he was responsible to creditors of the Pennsylvania company for any further stock contributions was neither raised, discussed, nor passed upon.

The criticism that the finding of the referee is inconsistent with the findings now under review is not a well-founded criticism. There is no inconsistency. What the referee found then he finds now, that Bergdoll held certificates for 3,000 shares of the New Jersey company, which he turned over to the Pennsylvania company, and that he received certificates for a like number of shares in the Pennsylvania company. He finds now that Bergdoll is responsible for something above $155,000 as a further contribution to the capital of the Pennsylvania company. He made no finding upon this latter question before, because the question was not presented to him.

The res adjudicata doctrine is in no respect applicable. Indeed, it would seem that the charge of inconsistency might be retorted upon the petitioner. He claimed then that this $300,000 was a loan to the New Jersey corporation, and the debt of the Pennsylvania corporation, because assumed by it. He claims now that the $300,000 was a stock contribution to the New Jersey corporation, and by the transfer of its assets was in discharge of his stock subscription to the Pennsylvania corporation.

The question is not before us; nor do we wish to be understood as holding that, if Bergdoll had stood upon his rights, the referee would have been justified in making more than an administrative finding, which would have formed the basis of a cause of action on the part of the trustee for the amount of the assessment levied. This would have settled merely the question of the propriety and amount of the assessment. It would have left open all other questions bearing upon Bergdoll's liability—whether he was a subscriber to the stock, for what amount he had subscribed, whether the subscription had been met in whole or part by payment, and all other questions which could arise in the action which might have been brought against him.

We do not decide that this was not his right, and if he had claimed it, and insisted upon it, and the referee had proceeded by summary process against him, and had made an order upon him for payment, and if the order had been one not asked for by the trustee, and the making of it was beyond the scope of the petition, which was limited to an administrative order, the present petitioner for review would have been in a strong position to ask for the reversal of any such order.

The finding of the referee, however, is, and it is abundantly justified by the proceedings before him, that, so far from standing upon any such right, the present petitioner made answer to the petition in which he raised and submitted to the referee all the questions involved, not merely those bearing upon the administrative order, but those bearing upon the question of liability. He followed this up by the introduction of evidence, and by himself testifying upon all features of the case. By doing this he consented to the exercise of summary jurisdiction by the referee, and submitted himself to that jurisdiction, as did also the trustee. Had the findings of the referee been otherwise than they were, and favorable to Bergdoll, the trustee would have been concluded thereby, and Bergdoll would have received the fruits of his victory. Having accepted the chance of a decision in his favor, and having asked the referee to constitute himself a court to pass upon matters presented by the petitioner, he cannot now be permitted to deny to the referee the powers which he asked the referee to exercise in his favor. The distinction between summary and plenary jurisdiction is clear and important, and has always been recognized by the courts, and the rights of all parties concerned protected and preserved. In re Flanigan (D. C.) 228 Fed. 339.

The petition for review is denied, the findings of the referee are approved, and the order made by him is affirmed and confirmed.